Present:  All the Justices

DEBRA S. LEE, AS MOTHER AND NEXT
FRIEND OF ROY JAMES LEE, A MINOR,
ET AL.

                     OPINION BY JUSTICE ELIZABETH B. LACY
v.   Record No. 970970          February 27, 1998

NATIONWIDE MUTUAL INSURANCE
COMPANY

          FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
               George E. Honts, III, Judge

     In this case, we consider whether the trial court erred in holding as a matter of law that the defense of illegality barred the claim for damages of a 13-year-old boy rather than submitting to the jury the issue of the boy's consent to the illegal act.

Late in the evening of November 1, 1993, 13-year-old Roy James Lee locked his bedroom door and left his house, apparently through his bedroom window.  His parents did not know he was gone.  Lee went to the home of his friend, William Randall Slate, a high school freshman who was 16 years old.  Around 11:00 p.m., Lee called his girlfriend, 12-year-old Jessica Lee Fisher, and told her to take the keys to her mother's car from the coffee table and meet Lee and Slate at the basement door of her house.  Fisher's mother had already gone to bed.

     Fisher changed her clothes, got the keys, and met the boys as planned.  She gave the keys to Lee who, in turn,

gave them to Slate.  When the group walked to Mrs. Fisher's car, they heard the motor running on a neighbor's car parked nearby.  They decided not to take Mrs. Fisher's car at that time because they feared being discovered. Instead, Lee and Slate unsuccessfully tried to take a motorized bicycle parked nearby.  The group then walked to Slate's house where they stayed for about an hour.

When the three youths returned to Fisher's house, the motor of the neighbor's car was no longer running.  Fisher got into the back seat of her mother's car and Slate got in the driver's seat.  To avoid the possibility that Mrs. Fisher might hear the engine start, Lee pushed the car some distance away from its parking place.  Lee then got into the front passenger's seat.  For the next hour and a half, Slate drove the group around the area in Mrs. Fisher's car. Both Fisher and Lee knew that Slate had only a learner's driving permit.

At some point, Fisher asked Slate to return to her home, and he agreed to do so.  Around 2:00 a.m. on the return trip, Fisher noticed that Slate was driving at a speed of between 40 and 45 m.p.h. and asked him to slow down.  She also observed a "loose gravel" sign.

About one hour later, at 3:10 a.m., Virginia State Trooper Gene E. Ayers received a call to investigate an

accident on a portion of Route 605 that was under construction. The road at the accident location was an unmarked gravel surface 15 feet wide with ditches on both sides. When Trooper Ayers reached the accident scene, he found 270 feet of wavy tire marks in the gravel leading to one of the ditches. Mrs. Fisher's car was approximately 30 feet off the road. Trooper Ayers found Fisher "in and out of consciousness" in the back seat of the car. Lee was outside the car, halfway between the car and the road. The temperature was below freezing and some of the blood on both Lee and Fisher had begun to freeze. Slate was not at the scene of the accident when Ayers arrived.

Lee suffered severe head injuries in the accident resulting in catastrophic, permanent brain damage, and permanent disability.

Lee's mother, Debra S. Lee, filed a motion for judgment against Slate on her own behalf and on behalf of Lee as his next friend. Since Slate was an uninsured motorist, Nationwide Mutual Insurance Company (Nationwide), Debra Lee's uninsured motorist insurance carrier, defended the action. Nationwide filed an answer and a special plea asserting the defense of illegality. At trial, on motion by Nationwide, the court struck Lee's evidence and held that, as a matter of law, Lee freely and voluntarily,

without coercion or duress, consented to participation in the illegal act that resulted in his injuries. The trial court entered judgment in favor of Nationwide. Lee appeals, claiming the trial court erred in its application of the illegality defense.

The illegality defense is based on the principle that a party who consents to and participates in an illegal act may not recover from other participants for the consequences of that act. Miller v. Bennett, 190 Va. 162, 164-65, 56 S.E.2d 217, 218 (1949). The defense will be applied to bar recovery if the evidence shows that the plaintiff freely and voluntarily consented to participation in the illegal act, without duress or coercion. Trotter v. Okawa, 248 Va. 212, 216, 445 S.E.2d 121, 123-24 (1994). As with other defenses, the party raising the defense has the burden to establish it.

While none of our prior cases has involved the application of the defense of illegality to acts of a person younger than 14 years of age, Lee does not contend that the defense is unavailable in such cases. Nor does Lee dispute that taking Mrs. Fisher's car without permission was an illegal act. Rather, Lee asserts that the evidence presented conflicting factual issues as to whether Lee freely and voluntarily, without duress or

coercion, consented to participation in the illegal act, and, therefore, that the trial court should have submitted resolution of these issues to the jury rather than deciding them as a matter of law. In support of his position, Lee argues that the trial court's error was based on both its failure to apply a rebuttable evidentiary presumption that a person between the ages of 7 and 14 is incapable of consenting to an illegal act and its failure to consider the evidence in the light most favorable to Lee. However, Lee's position is not supported by either the record in this case or the law of this Commonwealth.

Lee argues that minors between the ages of 7 and 14 are afforded the protection of certain rebuttable presumptions of incapacity when charged with criminal culpability, citing Law v. Commonwealth, 75 Va. 885, 889 (1881), or contributory negligence, citing Doe v. Dewhirst, 240 Va. 266, 268, 396 S.E.2d 840, 842 (1990). The trial court, according to Lee, either should have applied those presumptions here or created and applied an ad hoc rebuttable presumption based on the circumstances of this case. We disagree.

Neither of the above standards is applicable to a determination of whether a person has engaged in an illegal act, for purposes of the illegality defense. That

determination is an objective inquiry.  See Zysk v. Zysk, 239 Va. 32, 35, 404 S.E.2d 721, 722 (1990).  However, whether the defense will be applied requires more than a simple showing that the plaintiff committed the illegal act.  As we have said, the defendant must also prove that the plaintiff consented to the commission of the illegal act and engaged in it, freely and voluntarily, without duress or coercion.  This evidentiary burden necessarily includes consideration of the maturity, intelligence, and mental capacity of the plaintiff, regardless of age.  Given this burden of proof, the rebuttable presumption suggested by Lee would serve no additional purpose and would provide no additional protection to the minor plaintiff.  Thus, there is no legal basis or persuasive rationale for imposing the type of presumption suggested by Lee, and the trial court correctly declined to do so.

We now turn to Lee's assertion that the evidence of voluntary consent, duress, and coercion was in conflict, and therefore, the trial court should have submitted the issue to the jury.  Viewing the evidence in the light most favorable to Lee, as we must when reviewing a motion to strike, Austin v. Shoney's, Inc., 254 Va. 134, 135, 486 S.E.2d 285, 285 (1997); Meador v. Lawson, 214 Va. 759, 761, 204 S.E.2d 285, 287 (1974), we conclude that the trial

court did not err in holding that reasonable persons could not disagree that Lee freely and voluntarily, without duress or coercion, consented to his participation in an illegal act.

The record shows that Lee was capable of understanding the nature of his acts and had the ability to make choices about his behavior. At the time of the illegal act, Lee was almost 14 years old. He performed at an average level in school and was capable of better performance. His behavior at school was average, and he played on organized sports teams. He complied with his parents' directions not to ride a motorized bicycle under certain circumstances. While described as a "follower" in his relationship with Slate, there is no evidence to support a finding that Lee was incapable of withholding consent or making other choices regarding his behavior.

With regard to the incident in question, the record shows that, outside the presence of Slate, Lee actively planned to take Mrs. Fisher's car and referred to the plan as "steal[ing]" the car when talking to Fisher. He told Fisher to take the keys, locked his bedroom door to avoid detection, and left his home through his bedroom window. He turned the keys over to Slate. Lee pushed the car away from Fisher's house to avoid detection and, according to

7

Fisher's testimony, during the ride in Mrs. Fisher's car, never tried to stop Slate, alter the way Slate was driving, or get out of the car.*

Lee argues that his actions were taken, not freely and voluntarily, but under duress and coercion by Slate. Lee relies on Fisher's testimony that Slate was the "leader" and Lee the "follower," that Lee wanted to impress Slate, that Lee would not get into trouble unless Slate was present, and that Lee would "act differently" when Slate was around. Lee also relies on Fisher's testimony that when Lee called her to plan the taking of her mother's car, she heard Slate in the background directing Lee to "tell me if we didn't take Mom's car, then they were going to bust out the windshield."

This evidence suggests that when Lee was with Slate he engaged in activity which he might not have undertaken by himself or with others. This evidence does not, however, support a conclusion that the change in Lee's demeanor or his actions were the result of coercion or duress by Slate, or that Lee had no control over his actions when he was with Slate. Rather, the evidence suggests that Lee engaged in actions which he believed would impress Slate and keep

---

* Lee has no memory of the accident or the events surrounding it.

Slate as his friend.  No expert evidence was presented that Slate's relationship with or influence on Lee in some way deprived Lee of his ability to make choices about his actions either on the night in question or at any other time.  Therefore, we conclude that, based on the record, the trial court was correct when it decided that reasonable persons could not disagree that Lee consented to his participation in an illegal act and that the illegality defense barred his recovery for injuries sustained as a result of that illegal act.

Accordingly, the judgment of the trial court will be affirmed.

Affirmed.