Sherie ARDINGER, Individually and as Personal Representative of the Estate of Joshua Nathaniel Van Bavel, Appellant and Cross–Appellee,

v.

Normandy J. HUMMELL, Appellee and Cross–Appellant.

Nos. S–8184, S–8214.

Supreme Court of Alaska.

July 23, 1999.

Brett von Gemmingen, Anchorage, for Appellant/Cross–Appellee.

Clayton Luke and Robert L. Richmond, Richmond & Quinn, Anchorage, for Appellee/Cross–Appellant.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

Fifteen-year-old Joshua Van Bavel was killed when the car he was driving hit a utility pole. Joshua's mother, Sherie Ardinger, sued fourteen-year-old Normandy Hummell for negligent entrustment. The jury found that Normandy was not liable. Ardinger appeals on several grounds, and Normandy cross-appeals. Because we conclude that the superior court erroneously instructed the jury on the elements of negligent entrustment, we reverse and remand for a new trial.

## II. FACTS AND PROCEEDINGS

This appeal arises out of a fatal automobile accident in Kodiak on December 5, 1993. On the afternoon of December 4 several teenagers, including Joshua Van Bavel, age fifteen, and Normandy Hummell, age fourteen, agreed to meet later that night, after their parents were asleep, to drive around together. At approximately 1:30 or 2:00 a.m., Normandy took her mother's car keys without her mother's knowledge or permission, pushed the car down the driveway with a friend, Christina Kilborn, and drove to Joshua's house. The roads were icy, and Normandy had trouble handling the car. The girls found their friends, David Lakings and Joshua, at Joshua's mother's house and asked whether the boys wanted to go out as planned.

According to the testimony of Christina and David, Normandy was scared of driving and at first asked Joshua to drive her home so that she and Joshua could wait for David to pick them up in David's mother's vehicle. But on the way to the car, Normandy insisted that she wanted to drive. She and Joshua argued about who should drive. The keys were already in the ignition, and Joshua got into the driver's seat, which he refused to relinquish. While Joshua and Normandy continued to argue, Joshua drove the four teenagers to David's house where David and Christina stayed.

Coast Guard security officers spotted Joshua and Normandy as they continued on to

Normandy's house. The officers observed the car lurching at a stop sign, as if the driver were having trouble with the clutch, and they decided to perform a welfare check to "make sure everything [was] okay." The officers turned on their vehicle's blue flashing lights. As one of the officers approached Normandy's mother's car on foot, Joshua sped away. The officer estimated that Joshua accelerated to a speed of seventy miles per hour. Joshua lost control of the car and collided with a utility pole. The collision caused his death.

Joshua's mother, Sherie Ardinger, as personal representative of her son's estate, filed a complaint against Normandy and her mother, Pamela Hummell, on December 4, 1995. She claimed that Normandy permitted Joshua to drive and that "[a]s the direct and proximate result of the acts, omissions, intentional and/or reckless conduct of [Normandy and Pamela], Joshua ... was allowed to operate a motor vehicle which resulted in his death." Normandy moved for summary judgment, arguing in part that Ardinger should be foreclosed from seeking relief because Joshua's own criminal conduct caused his death. Ardinger moved for summary judgment, arguing that Normandy was negligent as a matter of law and that she was engaged in an adult activity and should therefore be held to an adult standard of care. The superior court denied all of the motions. On April 18, 1997, Ardinger moved to amend the complaint to add herself as a party in an individual capacity so that she could assert claims for loss of consortium and society. The superior court granted the motion on the eve of trial, April 22, 1997.

The case proceeded to trial on April 23, 1997. The jury found that Normandy did not negligently entrust her mother's car to Joshua and that Pamela Hummell was not negligent. The court entered judgment in favor of Normandy and Pamela and awarded them costs and attorney's fees. Ardinger

appeals the judgment in favor of Normandy, and Normandy cross-appeals.

## III. DISCUSSION

Ardinger contends (1) that Normandy should have been held to an adult standard of care, (2) that Ardinger was entitled to a jury instruction on a simple negligence claim rather than on a claim of negligent entrustment, (3) that the negligent entrustment jury instruction was flawed, and (4) that Normandy was negligent as a matter of law in letting Joshua drive. Normandy cross-appeals, maintaining (1) that Joshua should have been barred from seeking damages because he was engaged in criminal conduct at the time of the accident, (2) that Ardinger should not have been allowed to be added as a plaintiff in her individual capacity on the eve of trial, and (3) that Normandy was entitled to a directed verdict on negligent entrustment.

### A. Standard of Review

The parties raise several questions of law. We review questions of law de novo and will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[1]

Both parties also appeal the superior court's denial of motions for summary judgment. "In reviewing a grant or denial of summary judgment, we must determine whether any genuine issues of material fact exist, and whether the moving party is entitled to judgment as a matter of law."[2] "The moving party bears the burden of demonstrating that there is no dispute as to any issue of material fact. All reasonable inferences of fact are drawn in favor of the nonmoving party."[3]

### B. Ardinger's Appeal

#### 1. Standard of care

Ardinger contends that Normandy should have been held to an adult standard of care. Before trial the superior court denied Ardinger's motion for summary judgment on

1. *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979); *see also Manes v. Coats,* 941 P.2d 120, 125 (Alaska 1997) ("Jury instructions to which a timely objection is made are subject to *de novo* review.").

2. *Willner's Fuel Distribs., Inc. v. Noreen,* 882 P.2d 399, 403 n. 7 (Alaska 1994).

3. *Andrews v. Wade & De Young, Inc.,* 950 P.2d 574, 575 (Alaska 1997) (citation omitted).

this issue, reasoning that Normandy "was not engaging in a uniquely adult activity when she permitted Joshua Van Bavel to drive the car." Accordingly, the court instructed the jury to decide whether Normandy used the reasonable care "ordinarily used by children of the same age, intelligence, knowledge, and experience in circumstances similar to those shown by the evidence."

▪ The superior court's instruction reflected the general rule expressed by the Restatement (Second) of Torts that children should be held to the standard of care of a reasonable person of the same "age, intelligence, and experience under like circumstances."[4] The rationale for holding children to a special standard of care derives from "the public interest in their welfare and protection."[5] As one court has explained, "the child's standard was created because public policy dictates that it would be unfair to predicate legal fault upon a standard most children are incapable of meeting."[6]

▪ But an exception to the rule "may arise where the child engages in an activity which is normally undertaken only by adults, and for which adult qualifications are required."[7] For example, if a child drives a car, age and inexperience may not excuse the child from liability for driving in a negligent manner.[8] According to *Prosser and Keeton on the Law of Torts*, it "is now quite generally accepted, that whenever a child … engages in an activity which is normally one for adults only, such as driving an automobile or flying an airplane, … the child must be held to the adult standard."[9]

Mindful of this exception to the rule, Ardinger argues that Normandy engaged in adult activities by taking possession of, oper-

ating, and permitting Joshua to operate her mother's car. We agree.

▪ Under Alaska law, exercising physical control of a motor vehicle on a roadway is an adult activity requiring a driver's license.[10] Alaska law recognizes that operating a motor vehicle includes exercising dominion over or physical control of a motor vehicle just as it includes driving a motor vehicle.[11] Children who physically control vehicles must, for public safety reasons, be held to an adult standard of care.

▪ In this case it is undisputed that Normandy had physical possession and control of the car when she allegedly allowed Joshua to drive. She took the keys from her mother; she drove the car to Joshua's house, where, assuming entrustment, she transferred physical control of the vehicle to Joshua. From the moment she assumed control of the car, any decisions she made as to the exercise and relinquishment of that control should be evaluated under an adult standard.

We therefore conclude that Normandy engaged in adult conduct by taking control of the car. Her ability to entrust the car to Joshua necessarily stemmed from her exertion of actual possession and control over the vehicle. Thus, the jury should have been instructed that if Normandy entrusted the vehicle to Joshua, her actions should be evaluated under an adult standard of care. Failure to instruct the jury in this manner was reversible error.

### 2. Negligence instruction

▪ Ardinger claims that the superior court erred by failing to give a "simple negligence," as opposed to a negligent entrustment, jury instruction. Specifically, she maintains that negligently entrusting a vehi-

---

4. Restatement (Second) of Torts § 283A (1965).

5. *Id.* cmt. b.

6. *Bauman v. Crawford*, 104 Wash.2d 241, 704 P.2d 1181, 1184 (1985).

7. Restatement (Second) of Torts § 283A cmt. c (1965).

8. *See id.*

9. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 32, at 181 (5th ed.1984) (foot-

notes omitted); *see also Summerill v. Shipley*, 890 P.2d 1042, 1044–46 (Utah App.1995) (compiling authority and stating that teen driver must conform to adult standard of care).

10. *See* AS 28.15.011(b).

11. *See, e.g., State, Dep't of Public Safety v. Conley*, 754 P.2d 232, 236 (Alaska 1988); *Jacobson v. State*, 551 P.2d 935, 937 (Alaska 1976).

cle to someone differs from negligent entrustment. In clarifying this alleged distinction, she insists that negligent entrustment necessarily "involves harm to a third party," while negligently entrusting a vehicle to an unlicensed driver does not. Thus, she contends that the latter tort represents an independent act of negligence. We reject this argument for two reasons.

First, from the outset of this litigation, Ardinger's stated cause of action against Normandy was for negligent entrustment. The only allegations against Normandy in the complaint are that she permitted Joshua to drive her mother's car and that Joshua was allowed to operate the car. Similarly, when the superior court asked Ardinger to specify the type of negligence claim she planned to assert at trial, she responded that the claim against Normandy was for "[n]egligent furnishing of a vehicle to an unlicensed driver." In our view, these claims can only reasonably be understood as negligent entrustment.

Second, Ardinger's distinction between negligent entrustment and an independent act of negligence for entrusting a vehicle does not withstand scrutiny. Neither our decisions nor other authorities consider such a distinction.[12] Whether the danger or harm is to the entrustee or to a third party, the tort is the same—negligent entrustment.

### 3. Negligent entrustment instruction

Ardinger asserts that the superior court incorrectly stated the legal elements of negligent entrustment to the jury. She objects to three elements of the instruction, which we consider in turn.

■ The court instructed the jury on negligent entrustment as follows:

Plaintiff claims that Normandy Hummell was negligent because she negligently entrusted Pamela Hummell's vehicle to decedent Joshua Van Bavel. In order for you to find that Normandy was negligent, you must find each of the following is more likely than not true:

1. that she was the owner of the vehicle or in control of the vehicle and responsible for its use;

2. that she willingly entrusted the car to decedent Joshua Van Bavel;

3. that she knew or should have known that the decedent was an incompetent or unfit driver; and

4. that she was directing the operation or participating in the operation of the vehicle at the time of the accident.

Even if you find the car was entrusted to a driver for limited purposes, this does not mean that the car was entrusted for all purposes, or that it continued to be entrusted to the driver at the time of the accident.

Ardinger first challenges the phrase "responsible for its use," claiming that it is potentially misleading. This argument is without merit. Our recent description of negligent entrustment in *Neary v. McDonald*[13] employed this very phrase; we explained that "the owner or other person in control of a vehicle and responsible for its use who is negligent in knowingly supplying, entrusting, permitting or lending it to an incompetent or habitually careless driver is liable for negligent entrustment."[14]

■ Ardinger next contests the phrase "willingly entrusted." She contends that a proper instruction would instead have stated that Normandy was "liable for negligent entrustment if she expressly or impliedly permitted" Joshua to drive the car. She claims that use of "willingly entrusted" failed to convey to the jury that it could consider whether Normandy impliedly gave Joshua permission to drive. But the phrase "willingly entrusted" conveys the same general meaning as "knowingly suppl[ied], entrust[ed], permitt[ed], or len[t]," as stated in

12. *See Neary v. McDonald,* 956 P.2d 1205, 1208 (Alaska 1998); *Providence Wash. Ins. Co. of Alaska v. McGee,* 764 P.2d 712, 715 (Alaska 1988); *Flieger v. Barcia,* 674 P.2d 299, 301 (Alaska 1983); *see also* Restatement (Second) of Torts § 390 (1965).

13. 956 P.2d 1205 (Alaska 1998).

14. *Id.* at 1208; *see also Flieger,* 674 P.2d at 301 (quoting "responsible for its use" language approvingly).

*Neary.*[15] Both phrases suggest that one person voluntarily allowed another to operate a car. Furthermore, Ardinger's argument notwithstanding, one could in fact impliedly willingly entrust a vehicle to someone else. We therefore reject this claim.

Finally, Ardinger objects to part (4) of the instruction, which states that the jury must find that Normandy was "directing the operation or participating in the operation of the vehicle at the time of the accident." She contends that part (4) was a "glaring legal error" because the theory of negligent entrustment does not require the direct participation of the entrustor.[16] We agree. Our previous decisions in no way suggest that liability for negligent entrustment requires a finding that the entrustor directed or participated in the operation of the vehicle.[17] Similarly, our review of other authorities uncovers no such requirement.[18]

Normandy nevertheless defends the instruction, maintaining that "negligent entrustment is a tort based on principles of agency" and that a minor will not be held liable for negligent acts of her agents "unless those acts are ratified by the minor." This analysis is misguided because it conflates the theories of negligent entrustment and joint enterprise. Although a party's direction or participation in the operation of a vehicle may be a necessary component of a joint enterprise claim, it has no relevance to an allegation of negligent entrustment. Negligent entrustment "is an independent cause of action against the owner and is not dependent on theories of agency, joint venture, or other forms of vicarious liability."[19] It simply does not require a finding that the en-

trustor directed or participated in the operation of the vehicle. We therefore conclude that it was error to include part (4) of the negligent entrustment instruction.

Given this conclusion, we must consider Normandy's contention that any flaw in part (4) of the jury instruction is harmless. The harmless error standard "requires that the court put itself as nearly as possible in the position of the jurors" to decide whether the error affected the verdict.[20] "The fundamental test of the courts is to determine whether substantial rights of the parties were affected or the error had substantial influence."[21] "An erroneous statement of law will not constitute reversible error unless it prejudiced one of the parties. An erroneous instruction is prejudicial if it can be said that the verdict may have been different had the erroneous instruction not been given."[22]

In this case, we cannot say that the erroneous portion of the instruction did not have a substantial influence on the jury's verdict. In closing argument, both sides argued about whether Normandy was directing or participating in the operation of the vehicle. It is entirely conceivable that the jury found that the first three parts of the instruction were met, but that Normandy was not directing or participating in the operation of the car. The verdict may have been different had the erroneous instruction not been given. Thus, we hold that giving part (4) of the jury instruction on negligent entrustment was reversible error.

### 4. Negligence per se

The negligence per se doctrine provides that a person who indisputably violates

---

15. Cf. *Nautilus Marine Enters., Inc. v. Valdez Fisheries Dev. Ass'n,* 943 P.2d 1201, 1204 (Alaska 1997) (affirming jury instruction that conveyed "substantially the same" meaning as statute).

16. We note that Ardinger properly objected in the superior court to this portion of the jury instruction and therefore preserved this issue for appeal. *See* Alaska Civil Rule 51(a).

17. *See Neary,* 956 P.2d at 1208–12.

18. *See, e.g.,* Restatement (Second) of Torts § 390 (1965) (stating that one who supplies a chattel for the use of another, knowing the risk of harm,

is subject to liability); Karen L. Ellmore, Annotation, *Negligent Entrustment of Motor Vehicle to Unlicensed Driver,* 55 A.L.R.4th 1100, 1114–20 (1987) (setting forth elements necessary to find liability for negligent entrustment).

19. Ellmore, *supra,* at 1106.

20. *Vincent v. Fairbanks Mem'l Hosp.,* 862 P.2d 847, 853 n. 11 (Alaska 1993).

21. *Id.* (citation omitted).

22. *Beck v. State, Dep't of Transp. & Pub. Facilities,* 837 P.2d 105, 114 (Alaska 1992).

a statute must be found negligent.[23] Ardinger argues that the superior court should have found Normandy negligent per se because she allowed an unlicensed driver to operate a car under her control in violation of AS 28.15.281(b), which provides:

> A person may not authorize or knowingly permit a motor vehicle owned by the person or under the control of the person to be driven in this state by a person who is not validly licensed.

As an initial matter, it is unclear whether Ardinger seeks review of (a) the court's denial of her summary judgment motion to hold Normandy negligent per se, or (b) the court's failure to give a negligence per se jury instruction. We address both arguments.

■ Where reasonable minds can draw different inferences and reach different conclusions from the facts, summary judgment is not appropriate.[24] In this case, the factual question of whether Normandy allowed Joshua to drive was contested. Normandy, Christina, and David all testified that Normandy argued with Joshua about who should drive. Collectively, they described how Joshua took control of the driver's seat and refused to relinquish it. Their testimony suggests that Normandy may not have authorized or permitted Joshua to drive. Indeed, throughout this litigation the parties vigorously disagreed about whether Normandy authorized or knowingly permitted Joshua

to drive. Because a legitimate factual dispute existed, we conclude that the trial court's denial of summary judgment on the issue of whether Normandy was negligent per se was not error.

■ Ardinger also implies that the court erred by rejecting her proposed jury instruction that Normandy be found negligent per se if she violated AS 28.15.281(b). We agree with this contention. And although the majority of courts and the scholarly commentators endorse the view that negligence per se does not apply to children because it essentially imposes strict liability, leaving no room for consideration of a child's age, intelligence, and experience, we have determined that Normandy should be held to an adult standard of care in this case.[25] Thus, the court's failure to instruct the jury on negligence per se was error.[26]

### C. Normandy's Cross–Appeal

Because we conclude that the court's erroneous instructions warrant a remand, we must consider Normandy's three arguments on cross-appeal.

#### 1. Public policy bar against recovery

Normandy moved for summary judgment on the theory that public policy barred Ardinger from seeking recovery for harm arising out of Joshua's criminal conduct,[27] but

**23.** See, e.g., Ferrell v. Baxter, 484 P.2d 250, 257–58 (Alaska 1971) ("The violation of either an applicable traffic statute or regulation which has been adopted by the court as a standard of reasonable behavior is negligence per se."); Keeton, supra, § 36, at 229–30.

**24.** See Neary, 956 P.2d at 1212.

**25.** See, e.g., Bauman v. Crawford, 104 Wash.2d 241, 704 P.2d 1181, 1184–85 (1985); Rosenau v. City of Estherville, 199 N.W.2d 125, 129 (Iowa 1972).

**26.** Ardinger also alleges that the superior court improperly instructed the jury on the method of calculating loss to Joshua's estate. She asks us to order the superior court on remand to hold an evidentiary hearing on this issue. Because Ardinger did not request such a hearing below, we do not address the merits of her argument. See Williams v. Alyeska Pipeline Serv. Co., 650 P.2d 343, 351 (Alaska 1982) (stating that this court will not consider on appeal an argument not

raised before the trial court). We note, however, that on remand she is free to request a hearing on the method of calculating loss to Joshua's estate.

**27.** Although Normandy presents a public policy argument, AS 09.65.210 states:

> A person who suffers personal injury or death may not recover damages for the personal injury or death if the injuries or death occurred while the person was engaged in the commission of a felony, the person has been convicted of the felony, including conviction based on a guilty plea or plea of nolo contendere, and the felony substantially contributed to the injury or death. This section does not affect a right of action under 42 U.S.C.1983.

We note an anomaly in the statute: A person who suffers death may be barred from recovering damages only if the person has been convicted of the underlying felony. Thus, by its terms, the statute ensures that a person who suffers death will never be barred from recovery.

the superior court denied the motion. Normandy appeals, maintaining that Joshua violated former AS 11.46.482(a)(4) by driving a car without its owner's permission and damaging it,[28] and that "public policy precludes an action in tort for damages arising out of one's criminal misconduct."[29]

It is well established that "one who violates a criminal statute is not deprived of all protection against the torts of others."[30] The fact that an individual was engaged in unlawful conduct when injured is not, by itself, enough to bar recovery.[31] Absent a causal connection between the injured party's unlawful conduct and her injuries, her unlawful conduct does not bar her from seeking relief from the negligent party who caused her injuries.[32] For example, if an individual is injured in an automobile accident as a result of another's negligence, she is not barred from bringing an action against the negligent party merely because she was carrying contraband goods at the time of the accident.[33]

But there is a public policy exception to this rule: "[I]f the injured person has violated a statute designed to prevent a certain type of risk, he is barred from recovery for harm caused by violation of the statute if,

but only if, the harm resulted from a risk of the type against which the statute was intended to give protection."[34]

We have "recognized the public policy principle which precludes a person who has been convicted of a crime from imposing liability on others for the consequences of that antisocial conduct."[35] In *Adkinson v. Rossi Arms Co.*,[36] we held that an assailant convicted of manslaughter for shooting and killing his victim was barred from recovering from the manufacturer or seller of the gun for direct personal losses allegedly resulting from the shooting.[37] We reasoned that allowing the assailant to recover would compensate him for an intentional homicide and undermine the values of criminal justice:

> Finding that [the manufacturer and seller of the gun] owed a duty to the [assailant] would tend to denigrate [the assailant's] personal responsibility for his criminal conduct and would have the effect of compensating [him] for the consequences of an intentional homicide, ultimately [transferring] the costs involved to the public.

Furthermore, allowing a criminal defendant, who has been convicted of an intentional killing, to impose liability on others for the consequences of his own anti-social

---

**28.** Former AS 11.46.482(a)(4), which was in effect at the time of the accident, provided:

> (a) A person commits the crime of criminal mischief in the second degree if, having no right to do so or any reasonable ground to believe the person has such right,
> . . . .
> (4) the person drives, tows away, or takes the propelled vehicle of another and the vehicle or any other property of another is damaged, or the owner incurs reasonable expenses as a result of the loss of use of the vehicle, in a total amount of $500 or more.

This offense is now codified at AS 11.46.360(a)(2).

**29.** Normandy also notes without further explanation that "Joshua's conduct was compounded by the fact that he was driving without a license, a misdemeanor." But absent a causal connection between the lack of a license and the resulting injuries, operation of a vehicle without a license does not preclude recovery. *See* 8 Am.Jur.2d Automobiles and Highway Traffic § 813 (1997 & Supp.1998); 60 C.J.S. Motor Vehicles § 163 (1969 & Supp.1998). Normandy alleges no such connection.

**30.** Keeton, *supra*, § 36, at 232.

**31.** *See* Restatement (Second) of Torts § 889 cmt. b (1979).

**32.** *See* 74 Am.Jur.2d Torts § 46 (1974 & Supp. 1998); 1A C.J.S. Actions § 30 (1985 & Supp. 1998); 60 C.J.S. Motor Vehicles § 163 (1969 & Supp.1998).

**33.** *See* Restatement (Second) of Torts § 889 cmt. b, illus. 3; *see also Barker v. Kallash*, 63 N.Y.2d 19, 479 N.Y.S.2d 201, 468 N.E.2d 39, 41 (1984) (stating that if a plaintiff had been injured in an automobile accident as a result of another's negligence, she is not barred from bringing an action merely because she was on the way to have an illegal abortion performed).

**34.** Restatement (Second) of Torts § 889 cmt. b.

**35.** *Burcina v. City of Ketchikan*, 902 P.2d 817, 820 (Alaska 1995).

**36.** 659 P.2d 1236 (Alaska 1983).

**37.** *See id.* at 1240.

conduct runs counter to basic values underlying our criminal justice system.[38]

In subsequent decisions, we have reiterated the public policy principle, explaining that it "precludes recovery at the very threshold of the plaintiff's application for judicial relief." [39]

■■■ The public policy bar also operates as an exception to our comparative negligence regime, under which liability is allocated in proportion to each party's fault.[40] In adopting comparative negligence, we abandoned contributory negligence, which placed the entire burden of a loss on one party, and failed to distribute responsibility in proportion to fault.[41] Yet, in those cases in which recovery is barred on public policy grounds, the result mirrors the outcome of the abandoned contributory negligence rule: Responsibility is not necessarily allocated in proportion to fault, and one party is exempted from liability altogether.[42] It is therefore only with considerable prudence that we invoke the public policy bar against recovery. Accordingly, we have applied the public policy rationale for barring recovery only in cases involving serious criminal conduct that intentionally threatened the safety of others, such as homicide, rape, and arson.[43]

Other courts have adopted this restrained application of the public policy bar. In *Barker v. Kallash,*[44] the court restricted the reach of the principle to cases involving serious offenders.[45] In precluding a fifteen-year-old plaintiff who was injured while constructing a bomb from seeking relief from the nine-year-old who sold him firecrackers used to make the bomb, the New York Court of Appeals conceded that "not every violation of the law, no matter how petty or slight, will serve to completely resolve a question of tort liability." [46] The court emphasized that public policy foreclosed recovery only where a plaintiff's injuries "were a direct result of a serious violation of the law involving hazardous activities which were not justified under the circumstances." [47]

■■■ The offense on which Normandy relies cannot reasonably be equated with crimes such as homicide, rape, and arson for purposes of barring recovery on public policy grounds. Normandy's public policy argument is based solely on the claim that Joshua violated former AS 11.46.482(a)(4) by driving a car without its owner's permission. Such a violation does not represent the level of serious criminal conduct generally necessary to bar recovery.[48] Moreover, the harm to Joshua did not clearly result "from a risk of the type against which [former AS 11.46.482(a)(4)] was intended to give protection." [49] That statutory provision, which was included in the chapter of our criminal laws defining offenses against property, was designed to prevent theft and the consequent harm to property. The harm in this case

**38.** *Id.* (footnote omitted).

**39.** *Lord v. Fogcutter Bar,* 813 P.2d 660, 663 (Alaska 1991) (quotation and citation omitted).

**40.** *See Kaatz v. State,* 540 P.2d 1037, 1049 (Alaska 1975) (adopting comparative negligence); AS 09.17.060 (codifying comparative negligence).

**41.** *See Kaatz,* 540 P.2d at 1047.

**42.** *See, e.g., Flanagan v. Baker,* 35 Mass.App.Ct. 444, 621 N.E.2d 1190, 1193 (1993) (declining to apply public policy bar because it "would itself offend a countervailing public policy to the extent it could also protect from possible liability those persons [who were also at fault]").

**43.** *See, e.g., Burcina,* 902 P.2d at 820–21 (arson); *Lord,* 813 P.2d at 662 (kidnapping and rape); *Adkinson,* 659 P.2d at 1240 (manslaughter). *But see Beilgard v. State,* 896 P.2d 230, 234 (Alaska 1995) (applying public policy bar where plaintiff pled no contest to non-felonious conduct and

claimed state was liable for omissions that allegedly caused plaintiff to violate state law).

**44.** 63 N.Y.2d 19, 479 N.Y.S.2d 201, 468 N.E.2d 39 (1984).

**45.** *See id.* 479 N.Y.S.2d 201, 468 N.E.2d at 41–42.

**46.** *Id.* 479 N.Y.S.2d 201, 468 N.E.2d at 42.

**47.** *Id.*

**48.** *But see Manning v. Brown,* 91 N.Y.2d 116, 667 N.Y.S.2d 336, 689 N.E.2d 1382, 1384–85 (1997) (holding that joyriding constituted a serious offense for purpose of public policy analysis); *Lee v. Nationwide Mut. Ins. Co.,* 255 Va. 279, 497 S.E.2d 328, 330–31 (1998) (holding that injured minor could not recover from other minor where injured minor participated in illegal acts).

**49.** Restatement (Second) of Torts § 889 cmt. b.

was not directly caused by the act of theft. The causal nexus between Joshua's violation of the statute and his death is therefore tenuous. We thus conclude that public policy does not prevent Ardinger from seeking recovery against Normandy.

### 2. *Ardinger as a plaintiff in her individual capacity*

Normandy next argues that the superior court erred by allowing Ardinger to "join the lawsuit on the eve of trial and long after the statute of limitations had run." Ardinger originally brought suit solely in her capacity as the representative of Joshua's estate within the two-year period required by AS 09.10.070. On April 22, 1997, the day before jury selection was to begin, the superior court granted Ardinger's motion to amend the complaint to add herself in her individual capacity as a plaintiff. The court noted that Normandy had referred in pleadings to "plaintiff's loss of society claim," had acknowledged that Ardinger was "almost certainly claiming damages" for pain and suffering in her individual capacity, and had investigated Ardinger's individual loss of society claim. It therefore concluded that "[b]ecause the defendants were aware of Ardinger's individual loss of society claim as early as December 13, 1996; conducted discovery for that claim; submitted jury instructions related, in part, to that claim; and are prepared to defend that claim at trial, the amendment sought by Ardinger should be permitted." The court further concluded that the individual claims related back to the date of the original pleading. Normandy contends, however, that although she "referenced" Ardinger's potential claim twice in pleadings, she was not prepared to oppose the claim.

■ Alaska Civil Rule 15 governs amendments of pleadings. It provides that courts shall freely allow parties to amend pleadings when justice requires:

(a) ... [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

. . . .

(c) Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

The superior court has broad discretion to allow amendment of pleadings.[50] "Leave to amend under Rule 15, subsection (a) has traditionally been freely given,"[51] and relation back under subsection (c) is liberally construed.[52] As we stated in *Farmer v. State*,[53] "the touchstone of the relation back doctrine is fairness."[54]

■ We conclude that the superior court did not abuse its discretion in allowing Ardinger to amend the complaint. Ardinger's individual claims are based on the same conduct relied upon in the complaint. As the superior court concluded, the record discloses that Normandy was aware of Ardinger's individual claims and had prepared for them at least to some degree. Moreover, on remand, Normandy will have ample time to prepare a defense against Ardinger's claims in her individual capacity.

### 3. *Motion for directed verdict*

■ Finally, Normandy contends that she was entitled to a directed verdict because it was undisputed that she did not willingly entrust the car to Joshua. The superior court denied her motion to this effect at the close of evidence. Because there was a legitimate factual dispute about whether Normandy permitted Joshua to drive the car, we conclude that a directed verdict would have been premature.[55] Whether Normandy will-

---

**50.** *See Revelle v. Marston*, 898 P.2d 917, 928 (Alaska 1995).

**51.** *Magestro v. State*, 785 P.2d 1211, 1212 (Alaska 1990).

**52.** *See Farmer v. State*, 788 P.2d 43, 48 n. 13 (Alaska 1990); *Magestro*, 785 P.2d at 1213.

**53.** 788 P.2d 43 (Alaska 1990).

**54.** *Id.* at 47.

**55.** A directed verdict is appropriate only if "the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable [persons] could not differ in their judg-

ingly entrusted the car to Joshua was a factual dispute properly left for the jury to decide.

## IV. CONCLUSION

We conclude that the superior court committed reversible error in its instructions on the standard of care, negligence per se, and negligent entrustment. Accordingly, we REVERSE and REMAND to the superior court.

ment." *See Van Sandt v. Brown,* 944 P.2d 449,    451 (Alaska 1997) (citation omitted).