**Sherie CROSBY, Individually, and as Personal Representative of the Estate of Joshua Nathaniel Van Bavel, Appellants,**

v.

**Normandy J. HUMMELL, Appellee.**

No. S–9987.

Supreme Court of Alaska.

Feb. 7, 2003.

---

Brett Von Gemmingen, Anchorage, for Appellants.

Marc G. Wilhelm, Richmond & Quinn, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

Sherie Crosby appeals from a judgment denying her claim for the wrongful death of her fifteen-year-old son, who was fatally injured in an accident while driving a friend's mother's car. Crosby alleged that her son's friend committed negligence per se by permitting an unlicensed person to drive in violation of AS 28.15.281(b). Crosby argues that the trial court erred by instructing the jury to consider all the elements needed to establish a violation of AS 28.15.281(b) when only one element was actually disputed, by denying her motion for summary judgment on the issue of permission to drive, and by excluding evidence of an admission by Normandy. Because we find no reversible error, we affirm the judgment.

## II. FACTS AND PROCEEDINGS

This appeal arises from a retrial after our remand in *Ardinger v. Hummell.*[1] There we described the underlying facts as follows:

> On the afternoon of December 4 several teenagers, including Joshua Van Bavel, age fifteen, and Normandy Hummell, age fourteen, agreed to meet later that night, after their parents were asleep, to drive around together. At approximately 1:30 or 2:00 a.m., Normandy took her mother's car keys without her mother's knowledge or permission, pushed the car down the driveway with a friend, Christina Kilborn, and drove to Joshua's house. The roads were icy, and Normandy had trouble handling the car. The girls found their friends, David Lakings and Joshua, at Joshua's mother's house and asked whether the boys wanted to go out as planned.
>
> According to the testimony of Christina and David, Normandy was scared of driving and at first asked Joshua to drive her home so that she and Joshua could wait for David to pick them up in David's mother's

vehicle. But on the way to the car, Normandy insisted that she wanted to drive. She and Joshua argued about who should drive. The keys were already in the ignition, and Joshua got into the driver's seat, which he refused to relinquish. While Joshua and Normandy continued to argue, Joshua drove the four teenagers to David's house where David and Christina stayed.

> Coast Guard security officers spotted Joshua and Normandy as they continued on to Normandy's house. The officers observed the car lurching at a stop sign, as if the driver were having trouble with the clutch, and they decided to perform a welfare check to "make sure everything [was] okay." The officers turned on their vehicle's blue flashing lights. As one of the officers approached Normandy's mother's car on foot, Joshua sped away. The officer estimated that Joshua accelerated to a speed of seventy miles per hour. Joshua lost control of the car and collided with a utility pole. The collision caused his death.[2]

After the accident, Joshua's mother, Sherie Crosby (then Ardinger) sued Normandy Hummell, claiming that Normandy was liable under theories of negligent entrustment and negligence per se for permitting Joshua, an unlicensed driver, to drive her mother's car.[3] The jury returned a verdict in favor of Normandy.[4] On appeal, we reversed and remanded for a new trial, finding, among other things, that the jury should have been instructed to hold Normandy to an adult standard of care [5] and should have been told that Normandy's conduct would be negligent per se if the jury found that she had violated AS 28.15.281(b), a provision of the motor vehicle code that makes it unlawful for a person in control of a motor vehicle to knowingly permit the vehicle to be driven by an unlicensed driver.[6]

At the trial on remand, Crosby pursued only her claim of negligence per se, again

1. 982 P.2d 727 (Alaska 1999).

2. *Id.* at 729–30.

3. *Id.* at 730.

4. *Id.*

5. *Id.* at 730–31.

6. *Id.* at 733–34.

contending that Normandy had violated AS 28.15.281(b) by allowing Joshua to drive even though she knew that he had no driver's license. The jury on retrial rejected the claim and returned a verdict in Normandy's favor, finding that she had not violated the statute. Crosby appeals.

## III. DISCUSSION

### A. Jury Instructions[7]

■■■ Crosby first argues that the trial court erred by giving the jury the standard negligence per se instruction, which placed in issue and required the jury to find all of the necessary elements of a violation of AS 28.15.281(b). The disputed instruction stated, in critical part:

> There is a law of the State of Alaska, Alaska Statute 28.15.281(b), which provides:
>
> A person may not authorize or knowingly permit a motor vehicle owned by the person or under the control of the person to be driven in this state by a person who is not validly licensed.
>
> You must decide whether it is more likely true than not true that the defen-

dant, Normandy Hummell, violated this law.

Pointing to Normandy's admission that Joshua was unlicensed,[8] to our prior decision in *Ardinger v. Hummell,* which found it undisputed that Normandy assumed control of the car by taking it from her mother,[9] and to statements by Normandy's counsel describing permission as the central point in issue,[10] Crosby insists that the trial court should have given her proposed negligence per se instruction, which would have made it clear that permission was the only element of AS 28.15.281(b) that was actually in dispute.[11]

Crosby's argument is unpersuasive. The challenged instruction accurately stated all the statutory elements of the offense upon which Crosby predicated her claim of negligence per se—permitting an unlicensed person to drive, a violation of AS 28.15.281(b). Even if some elements of that offense were wholly undisputed, we fail to see how the instruction's completeness would, in itself, create a risk of jury error. Crosby fails to identify any case-specific circumstances suggesting that her jury needed an instruction confirming a seemingly obvious point: that an undisputed factual issue was indeed undisputed. To the extent that undisputed evi-

---

7. We review jury instructions de novo and, if we find error, look from a juror's perspective at whether it probably would have affected the verdict. *Id.* at 730 n. 1; *Vincent by Staton v. Fairbanks Mem'l Hosp.,* 862 P.2d 847, 851 (Alaska 1993).

8. Normandy expressly acknowledged knowing that Joshua did not have a valid driver's license.

9. In concluding that Normandy should be held to an adult standard of care because she had engaged in an adult activity, our opinion noted:
   In this case it is undisputed that Normandy had physical possession and control of the car when she allegedly allowed Joshua to drive. She took the keys from her mother; she drove the car to Joshua's house, where, assuming entrustment, she transferred physical control of the vehicle to Joshua. From the moment she assumed control of the car, any decisions she made as to the exercise and relinquishment of that control should be evaluated under an adult standard.
   *Ardinger,* 982 P.2d at 731.

10. At the trial on remand, Normandy's counsel stated: "This whole trial has been over whether there was permission."

11. Crosby proposed the following jury instruction on negligence per se:
   There is a law of the State of Alaska [that] provides:
   A person may not authorize or knowingly permit a motor vehicle owned by the person or under the control of the person to be driven in this state by a person who is not validly licensed.
   AS 28.15.281(b).
   In this case it is undisputed that Normandy Hummell had physical possession and control of the car when she allegedly allowed Joshua Van Bavel to drive. It is also undisputed that Joshua Van Bavel was not validly licensed. The issue for you to decide is whether Normandy Hummell authorized or knowingly permitted Joshua Van Bavel to drive[] her mother's car.
   If you decide that it is more likely true than not true that [] Normandy Hummell violated any part of the law, then you are required to find Normandy Hummell negligent.
   If you find that Normandy Hummell did not violate the law, then you should pay no further attention to this law.

dence might have established some aspects of Crosby's negligence per se claim, then, we see no reason to suppose that the completeness of the challenged instruction on negligence per se would have had any effect on the jury other than to guide it to a proper conclusion on the undisputed points. After all, factfinding is the jury's quintessential role.

More important, the facts of the case are not nearly as straightforward as Crosby would have us believe, and they fail to support Crosby's premise that, under our holding in *Ardinger v. Hummell*, the issue of Normandy's control of the car was not in dispute. Our prior opinion did find it "undisputed that Normandy had physical possession and control of the car when she *allegedly* allowed Joshua to drive." [12] And undisputed evidence also established that Joshua ultimately gained control of the car. [13] But as our opinion made clear, a storm of controversy swirled around what occurred between these two points:

> Normandy, Christina, and David all testified that Normandy argued with Joshua about who should drive. Collectively, they described how Joshua *took control* of the driver's seat and refused to relinquish it. Their testimony suggests that Normandy may not have authorized or permitted Joshua to drive. Indeed, throughout this litigation the parties vigorously disagreed about whether Normandy authorized or knowingly permitted Joshua to drive. [14]

As we recognized, then, the crux of the dispute was how Joshua gained control of the car—whether Normandy willingly gave him control and authorized him to drive or whether he took possession despite her protests and she thereafter acquiesced in his driving only because continued resistance was futile.

Thus, our prior opinion did not, as Crosby maintains, hold that control was an undisputed issue. To the contrary, we effectively recognized that the disputed issues of control and permission were inseparably related. Moreover, because the case on remand was submitted to the jury as a claim of negligence per se, which the original jury was not allowed to consider, the relationship between control and permission became further complicated by the narrow statutory meaning of permission used in AS 28.15.281(b).

In ordinary usage, the verb "permit" encompasses at least two distinct meanings: one is relatively active and specific, as in to give permission to someone or to authorize something to happen; the other is broader and more passive, as in to tolerate something or to allow it to happen. [15] By requiring that permission to drive be knowingly given by a person in control of a motor vehicle, AS 28.15.281(b) uses the verb in its narrow sense. In the present case, for example, the statute unmistakably would have precluded the jury from finding a violation of the statute if it believed, as Normandy claimed, that Normandy did not knowingly surrender control of her car to Joshua and that she "permitted" him to drive only in the broader sense of the word—by ceasing her resistance and acquiescing to Joshua's demand to drive once she recognized that she had no ability to control his conduct.

Considering the totality of these circumstances, we are unable to conclude that the trial court erred in giving the jury a negligence per se instruction that listed all the elements of AS 28.15.281(b). Indeed, an instruction like Crosby's suggested alternative, which proposed to tell the jury to consider only the issue of permission, might have caused significant confusion by unduly constraining the jury's ability to consider all relevant evidence bearing on the issue of negligence per se. [16]

---

**12.** *Ardinger*, 982 P.2d at 731 (emphasis added).

**13.** *Id.* at 729, 734.

**14.** *Id.* at 734 (emphasis added).

**15.** *See* WEBSTER'S NEW WORLD DICTIONARY 1060 (2d college ed.1980) (defining "permit" to mean, in relevant part: "1. to allow; consent to; tolerate ... 2. to give permission to; authorize ...").

**16.** Our decision affirming the instruction on negligence per se makes it unnecessary to consider Crosby's related challenge to the instruction defining "control," since Crosby's challenge to that instruction is based on the premise that the element of control was not in issue.

We also need not decide Crosby's remaining arguments addressing other jury instructions. Crosby challenges Instruction No. 19, which informed the jury that "[a] person's failure to have

## B. Summary Judgment[17]

Crosby next contends that the superior court erred in failing to enter summary judgment on her claim of negligence per se. Before the retrial on remand, Crosby moved for summary judgment on her claim that Normandy violated AS 28.15.281(b). Her summary judgment motion asserted that our decision in *Ardinger v. Hummell* resolved all but one element necessary to prove a violation of the statute—whether Normandy had given Joshua permission to drive. The motion then alleged that Normandy's answer to Crosby's complaint had conclusively admitted that Normandy gave Joshua permission to drive. Crosby's complaint alleged that, on the day of the accident, Normandy had permitted Joshua to drive her mother's car; in answering this allegation, Normandy admitted giving Joshua permission but alleged that Joshua had "specifically requested to drive." This answer, Crosby's summary judgment motion reasoned, constituted a binding judicial admission that conclusively proved permission.

The superior court rejected this argument. Noting that Crosby had failed to claim a judicial admission on this point before the first trial and instead had elected to litigate the issue of permission, the court applied Alaska Civil Rule 15(b), which authorizes courts to treat issues not raised or disputed in the pleadings as being disputed when they "are tried by express or implied consent of the parties."[18] Crosby challenges this ruling. Without addressing the propriety of the trial court's reliance on Rule 15(b), Crosby's opening brief simply asserts that Normandy's answer qualifies as a conclusive admission. Crosby's reply brief expands on the issue by accusing the trial court of applying a double standard. Crosby reasons that, since the trial court allowed Normandy to dispute the issue of control on retrial—an issue that, according to Crosby, our first opinion definitively found to be undisputed—fairness dictates that the court should likewise have allowed Crosby to claim that the previously disputed issue of permission was now undisputed. But Crosby's argument fails for several reasons.

To qualify as a judicial admission, a party's answer must be a clear, deliberate,

---

an operator's license does not necessarily mean that the person is incompetent or unfit as a driver." Although the meaning and purpose of this instruction seem somewhat unclear, we agree with Normandy's contention that the instruction's only apparent relevance was to the issue of proximate cause, or, as Jury Instruction No. 17 put the issue, whether the violation of AS 28.15.281(b) that Normandy allegedly committed was "a legal cause" of Joshua's death. Yet the instructions directed the jury to decide this issue only if the jury found that Normandy had violated the statute. Since the special verdict form establishes that the jury found no statutory violation and returned its verdict without addressing the issue of legal cause, we find no reasonable likelihood that Instruction No. 19's disputed comment on incompetent and unfit driving had any substantial effect on the verdict. Crosby additionally challenges language in Instruction No. 17 describing circumstances in which a violation of AS 28.15.281(b) would be excused. Again, however, the jury's finding that Normandy did not violate the statute precluded it from reaching this issue.

**17.** We review summary judgment decisions de novo. *Barios v. Brooks Range Supply, Inc.*, 26 P.3d 1082, 1085 (Alaska 2001). We have explained that:

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." A genuine issue of fact "exists where reasonable jurors could disagree on the resolution of a factual issue." The court must view all facts in the light most favorable to the non-moving party. The party opposing summary judgment must set forth specific facts demonstrating that a material issue of fact exists.

*Anchorage Police Dep't Employees Ass'n v. Municipality of Anchorage*, 24 P.3d 547, 566 (Alaska 2001) (citations omitted).

**18.** Alaska Rule of Civil Procedure 15(b) provides, in part:

Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

and unequivocal statement of fact.[19]  Yet as our discussion of the jury instruction on negligence per se illustrates, Normandy's answer acknowledging that she had "permitted" Joshua to drive is susceptible of more than one meaning, and only the narrower meaning would establish a violation of AS 28.15.281(b).  In context, then, Normandy's answer is not an unequivocal statement of fact and therefore does not qualify as a judicial admission.

  Moreover, the superior court's reliance on Rule 15(b) was appropriate.  By allowing the parties to litigate the issue of permission as a disputed point at the first trial, the superior court effectively disregarded any inconsistent admissions on the point set out in the parties' pleadings.  On appeal following the first trial, this court expressly held that "a legitimate factual dispute existed" as to whether "Normandy authorized or knowingly permitted Joshua to drive."[20]  On remand, then, this holding established the law of the case, which the trial court properly followed.[21]

Finally, we find no merit in Crosby's claim of unequal treatment.  Although Crosby complains of being unfairly subjected to a double standard, her argument mistakenly assumes that the trial court disregarded a conclusive holding in our first opinion that the issue of control was undisputed.  As we decided earlier in this opinion, our prior opinion did not so hold.

### C.  Evidentiary Ruling

Crosby alternatively argues that Normandy's answer admitting that she "permitted" Joshua to drive was at least relevant evidence tending to show that Normandy had given Joshua permission.  By completely excluding this evidence, Crosby contends, the trial court committed reversible error.

Although we find considerable merit in Crosby's position that Normandy's answer was admissible as evidence of permission, we need not conclusively decide the issue.  Normandy made almost identical admissions in a pretrial deposition and an affidavit.[22]  At trial, the superior court allowed Crosby's counsel to rely on these admissions and to question Normandy about her statements.  And Crosby's attorney discussed the admissions in his closing argument to the jury.  Considering the availability of these parallel admissions, we find no reasonable likelihood that exclusion of Normandy's answer to the complaint had any appreciable effect on the verdict.  Even if error, then, exclusion of this evidence would have been harmless at most and would not warrant reversal.[23]

### IV.  CONCLUSION

We AFFIRM the trial court's jury instructions, denial of summary judgment, and evidentiary rulings.

19.  *Pugliese v. Perdue*, 988 P.2d 577, 580 (Alaska 1999); *Hayes v. Xerox Corp.*, 718 P.2d 929, 931 (Alaska 1986).

20.  *Ardinger*, 982 P.2d at 734.

21.  *See Wolff v. Arctic Bowl, Inc.*, 560 P.2d 758, 763 (Alaska 1977) ("The doctrine of the law of the case prohibits the reconsideration of issues which have been adjudicated in a previous appeal in the same case.").

22.  Normandy's affidavit asserted:
We discussed who would drive my mother's car.  Joshua asked me a question from a driver's test he had taken and said that if I could not answer it, he should drive.  When I could not answer the question, I agreed that he could drive to David Laking's house and then back to my home.

23.  An erroneous ruling requires reversal only if our review of the record convinces us that it probably had a substantial effect on the jury.  *Vincent by Staton v. Fairbanks Mem'l Hosp.*, 862 P.2d 847, 853 & n. 11 (Alaska 1993); *accord* Alaska R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

Crosby additionally urges us to provide guidance on remand by making two further findings: first, that the trial court erred in ruling that AS 09.15.010 does not allow a parent to recover damages for loss of a child's society beyond the child's age of majority; and second, by finding that a statement made in one of Normandy's pretrial motions regarding causation was an evidentiary admission.  Because we affirm the judgment in its entirety, these issues are moot.