Frank JONES, Sr., as the Natural Parent
and Guardian of Frank Jones, Jr.,
Appellant,

v.

HORACE MANN INSURANCE COM-
PANY, a Florida Corporation,
Appellee.

No. 4821.

Supreme Court of Alaska.

May 16, 1997.

Richard G. Haggart, Maloney & Haggart, Anchorage, for Appellant.

Larry Z. Moser, Pletcher, Weinig, Moser & Merriner, Anchorage, for Appellee.

Before COMPTON, Chief Justice, RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

*OPINION*

RABINOWITZ, Justice.

## I. *INTRODUCTION*

This appeal arises from the superior court's grant of summary judgment in favor of Horace Mann Insurance Company. The superior court held that a homeowner's policy issued by Horace Mann did not cover a snowmachine accident, which occurred on a public road.

## II. *FACTS AND PROCEEDINGS*

On November 24, 1991, Frank Jones, Jr. was struck by a snowmachine operated by ten-year-old Christopher Chezik and sustained serious injuries to his right leg. Chezik had been giving rides to friends on the machine that day. The accident occurred on Ridgeway Road, a public road about four-tenths of a mile from the Chezik home. Ridgeway Road is the access road to Georges Drive, which abuts the Cheziks' property.

At the time the Cheziks purchased their home on Georges Drive, they also purchased a homeowners' policy from Horace Mann In-

surance Company. Subsequent to the accident the Cheziks informed Horace Mann of the event. After an investigation, Horace Mann notified the Cheziks that it declined coverage.[1]

Thereafter Frank Jones, Sr. sued the Cheziks on his son's behalf. He sued Christopher Chezik for negligent operation of the snowmachine, and the parents for negligent supervision of Christopher. The Cheziks settled the lawsuit by paying $25,000 to Jones, assigning to him any claims they may have had against Horace Mann or its agents, and permitting a judgment to be entered against them. Following an uncontested damage presentation, the judgment amount was determined to be $333,547.78.

Frank Jones, Sr. then sued Horace Mann and Curtis Bates, an insurance broker, requesting specific performance and damages for negligence and breach of contract.[2] The Superior Court granted Horace Mann's subsequent motion for summary judgment. The linchpin of the ruling was its conclusion that the homeowners' policy issued to the Cheziks did not cover the snowmachine accident because it did not occur on "insured premises."

Frank Jones, Sr. now brings this appeal from the superior court's grant of summary judgment in favor of Horace Mann.

## III. *DISCUSSION*

### A. *Standard of Review*

■ This court will uphold summary judgment if no issues of material fact are in dispute and the moving party is entitled to judgment as a matter of law. *Bishop v. Municipality of Anchorage*, 899 P.2d 149, 153 (Alaska 1995). Interpretation of contract language is a question of law, subject to *de novo* review. *Cox v. Progressive Casualty Ins. Co.*, 869 P.2d 467, 468 n. 1 (Alaska 1994) (citations omitted). "This court interprets insurance contracts by looking to the language of the disputed policy provisions, the

1. On December 19, 1991, Ted Webber, of Horace Mann, wrote to Charles Chezik stating in relevant part:
   As I had indicated previously there is no coverage for ownership, maintenance, use, loading or unloading of a snowmobile type

   recreational motor vehicle while used off the insured premises.

2. Bates is not a party to this appeal because the claims against him were dismissed by stipulation of the parties.

language of other provisions of the policy, and to relevant extrinsic evidence. In addition, we also refer to case law interpreting similar provisions." [3] *Id.*

### B. *The Cheziks' Homeowners' Insurance Policy Does Not Cover the Snowmachine Accident.*

#### 1. *The accident did not occur on insured premises.*

██ Horace Mann denied coverage because in its opinion the accident did not occur on the "insured premises." The following policy provisions are relevant to resolution of this issue:

> **Coverage L—Personal Liability—We** pay, up to our limit, all sums for which an **insured** is liable by law because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies. **We** will defend a suit seeking damages if the suit resulted from **bodily injury** or **property damage** not excluded under this coverage....
>
> . . . .
>
> **INCIDENTAL LIABILITY COVERAGES**
>
> . . . .
>
> 5. **Motorized Vehicles—We** pay for the **bodily injury** or the **property damage** which:

3. Generally, the obligations of insurers are determined by the terms of the policy at issue. *Bering Strait Sch. Dist. v. RLI Ins. Co.*, 873 P.2d 1292, 1294–95 (Alaska 1994). The following rules of construction also apply:
   > Insurance contracts are contracts of adhesion, and as such "will be construed according to the 'principle of reasonable expectations.'" The reasonable expectation doctrine has been stated as follows:
   > > The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.
   > In order to determine the reasonable expectations of the parties,
   > > we look to the language of the disputed policy provisions, the language of other provisions of the insurance policy, and to relevant extrinsic evidence. In addition, we refer to case law interpreting similar provisions.

> a. occurs on the insured premises and is a result of the ownership, maintenance, use, loading or unloading of:
>
> 1) a **motorized vehicle** if it is not subject to **motor vehicle** registration because of its type or use; or
>
> 2) a **recreational motor vehicle;**
>
> b. results from:
>
> . . .
>
> 3) a **motorized vehicle** which is designed only for use off public roads and which is used mainly to service the **insured premises**.... [4]

### DEFINITIONS

> . . . .
>
> b. Under Coverages L and M, **insured** premises also includes:
>
> . . .
>
> 6) premises used by **you** in connection with the described location;
>
> 7) all access ways immediately adjoining the **insured premises**....

Jones contends that Ridgeway Road is an access way and that the situs of the accident on Ridgeway Road immediately adjoins the Cheziks' insured premises. More particularly, Jones argues the accident site was an "insured premises" because it is "immediately adjacent" to land used by the Cheziks in

*Id.* at 1294–95 (citations omitted).

4. The terms "Motor Vehicle," "Motorized Vehicle," and "Recreational Motor Vehicle" as used in the Horace Mann policy are defined as follows:
   > 9. **Motor vehicle** means a **motorized vehicle,** a trailer or a semi-trailer, and all attached machinery or equipment, if:
   > a. it is subject to **motor vehicle** registration; or
   > b. it is designed for use on public roads.
   > 10. **Motorized Vehicle** means a self-propelled land or amphibious vehicle regardless of method of surface contact. This includes parts and equipment.
   > . . . .
   > 14. **Recreational Motor Vehicle** means a **motorized vehicle,** a trailer or attached equipment that is designed or is used for leisure time activities and which is not a **motor vehicle.**

connection with their home.[5] Charles Chezik testified that the Chezik family used the land immediately adjacent to the scene of the accident for snowmobiling. Jones notes that "it is uncontested that Chezik's testimony and diagram show the Chezik family used the area *immediately adjacent* to the accident site on Ridgeway Road for snow machining and that such use occurred as a result of recreational snow machine rides initiated at the Chezik's home and returning to [it]." (Emphasis added.)

Horace Mann asserts that the situs of the accident, some four-tenths of a mile from the Cheziks' residence, does not fall within the policy definition of "insured premises." It argues the accident is excluded because it did not happen on the Cheziks' property, or on any adjacent premise used by the Cheziks in connection with their property, or on an access way immediately adjoining the insured premises.

In rejecting Jones's contentions the superior court stated, "While the policy contains no express geographical limit on the expansive definition of the insured premises, ... plaintiffs' reasonable expectations would have included such a limit."[6] Having studied the provisions in question and the relevant case law, we hold that the superior court correctly interpreted and applied the relevant policy provisions in concluding the accident did not occur on "insured premises."

In *United States Fire Insurance Co. v. Schnackenberg*, 88 Ill.2d 1, 57 Ill.Dec. 840, 429 N.E.2d 1203, 1207 (1981), the Illinois Supreme Court was called upon to interpret the phrase "ways immediately adjoining" the

insured premises. The court found that "[i]f [Schnackenberg's] interpretation of the coverage clause were adopted, the 'insured premises' definition would be rendered meaningless for there would be no geographical limit to coverage and liability for conduct which originated on the premises and could be said to be incidental thereto." Therefore the Supreme Court of Illinois concluded that a bicycle accident which occurred on a public road two and one half blocks from the insured's dwelling was not covered. *Id.*

The *Schnackenberg* court quoted with approval an annotation on premises liability:

"It is generally agreed that the term 'adjacent' means 'near' or 'close to'; that the term 'adjoining,' although more restrictive than the term 'adjacent,' has often been loosely used interchangeably with it; but that when the word 'immediately' modifies 'adjacent' or 'adjoining,' definite contact is meant, allowing no intervening space. In the application of these definitions, the courts have held injuries on sidewalks bounding the particularly described property to be covered by the policy, except when there is a clear indication to the contrary. And although there is authority to the contrary, a policy purporting to cover certain named premises and 'ways immediately adjoining' covers injury on the street bounding the premises, that is, injury sustained within the roadway directly in front of the property." Annot., 23 A.L.R.3d 1230, 1232–33 (1969).

*Id.* 57 Ill.Dec. at 843, 429 N.E.2d at 1206.

If Jones's arguments were accepted, there would be no "logical geographical limit" to

---

5. Jones states the argument as follows: "If the land immediately next to Ridgeway Road constitutes an 'insured premises,' because of its use in connection with the Cheziks' residence, then access-ways immediately adjacent to such land are also insured."

6. In *Herzog v. National Am. Ins. Co.*, 2 Cal.3d 192, 84 Cal.Rptr. 705, 707, 465 P.2d 841, 843 (1970), the court said:

The reasonable expectations of the insured in a homeowner's policy—as additionally manifested in the type of information sought upon application for such a policy and the relatively small premiums charged—clearly do not contemplate coverage for automobile-related accidents which occur beyond this limited area.

Nor do the reasonable expectations of the insured contemplate that his homeowner's policy will provide such extended automobile coverage; other insurance, with a premium commensurate to the increased risks, is available for that purpose, and, as in the case at bench, is customarily obtained by the homeowner. From the foregoing it clearly appears that neither the intent of the parties nor their reasonable expectations contemplate that the personal liability provisions of a homeowner's policy should provide coverage for automobile accidents occurring away from the immediate vicinity of the home. Thus, any construction of the policy which would provide such extended coverage would be contrary to the intent and reasonable expectations of both insurer and insured.

coverage under the homeowners' policy. *See id.* at 843–44, 429 N.E.2d at 1206–07 ("If bicycle riding 2 1/2 blocks away from the insured premises is a use incidental to those premises because it originated there, it is just as incidental if the rider is 2 1/2 miles or any greater distance from home."). A number of courts have accepted the *Schnackenberg* rationale. *See, e.g. Herzog v. National American Ins. Co.*, 2 Cal.3d 192, 84 Cal.Rptr. 705, 465 P.2d 841, 844 (1970) (homeowner's policy that disclaimed liability for accidents "away from the premises or the ways immediately adjoining" did not cover an accident on a freeway, three to five miles from the insured's premises); *Safeco Ins. Co. v. Brimie*, 163 Ill.App.3d 200, 114 Ill.Dec. 422, 516 N.E.2d 577, 581 (1987) (homeowner's policy did not cover accident occurring on school grounds on which insured regularly rode where accident site was separated from residence by playground, public street, and fence); *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104, 109 (Iowa 1981) (for policies with the "ways immediately adjoining" language, claims arising from accidents "on ways not actually contiguous to or touching the insured premises have been uniformly held, as a matter of law, to be excluded from coverage"). *Cf. Huggins v. Yoshiwara*, 2 Cal.3d 200, 84 Cal.Rptr. 709, 465 P.2d 845, 846 (1970) (homeowner's policy that provides coverage for automobile accidents in certain limited instances does not become a motor vehicle insurance policy).

Based on the terms of the Horace Mann policy and the reasoning of these authorities, we agree with the superior court's ruling that the accident did not occur on insured premises. A construction of the relevant provisions that included coverage for an accident occurring on a public road, four-tenths of a mile from the Cheziks' residence, would be contrary to the intent and reasonable expectations of both the insurer and the insured. Land used by the Cheziks on a snowmachine four-tenths of a mile from their residence cannot be reasonably viewed as "premises used ... in connection with" their property. As the *Herzog* court stated:

While we agree that the phrase "ways immediately adjoining" is somewhat imprecise, we do not believe that it is so ambiguous as to defy reasonable construction in the context of a particular case. Such construction in the instant case leads us to conclude without hesitation that the accident in question, which took place on [a freeway], occurred "away from the premises [of the insured] or the ways immediately adjoining...." Thus, coverage of that accident is not provided by the policy.

*Herzog v. National Am. Ins. Co.*, 84 Cal. Rptr. at 708, 465 P.2d at 844 (citations and footnotes omitted).

2. *The snowmachine was not used mainly to service the Chezik residence.*

Jones next contends that because the snowmachine was used mainly to service the insured premises, coverage exists since there is no geographical limitation on the policy's coverage of such use. Jones relies on Section 5(b)(3) of the Incidental Liability Coverage section of the Horace Mann policy which states:

5. **Motorized Vehicles—We** pay for **bodily injury** or the **property damage** which:

. . .

b. results from:

. . .

3) a **motorized vehicle** which is designed only for use off public roads and which is used mainly to service the **insured premises**[.]

Jones further notes that Charles Chezik testified that servicing the premises includes giving snowmachine rides and that the snowmachine was used at least once to haul a Christmas tree to the residence.[7]

In rejecting this theory of coverage, the superior court found "that the snowmobile was not used 'mainly to service the insured premises' because neither the plain meaning of the phrase nor the reasonable expectation of the insured party could lead to such a conclusion." In our view the superior court

---

7. Carol Chezik further testified the snowmachine was used on one occasion to haul wood to the residence.

correctly analyzed this issue and properly concluded that summary judgment should be granted to Horace Mann on this theory of coverage.

Although the term "service" is not defined in the policy, it has been defined as meaning "to repair or provide maintenance for." *Nationwide Mut. Ins. Co. v. Prevatte*, 108 N.C.App. 152, 423 S.E.2d 90, 93 (1992) (citing *The Meriam Webster Dictionary* (3d ed. 1968)). Study of the record reveals an absence of any genuine issue of material fact concerning whether or not the snowmachine was used mainly to service the insured premises. Apart from one isolated instance of hauling wood and one Christmas tree hauling, it is undisputed that the vehicle was used for recreational purposes. We agree with Horace Mann that it is unreasonable to interpret the term "used mainly for service of the insured premises" as including recreational use of a snowmachine. Thus the Cheziks had no reasonable expectation of coverage based upon section 5(b)(3) of the Incidental Liability section of the Horace Mann policy.

■ Jones further argues that the accident is covered under this provision because Horace Mann has waived any right to argue that the vehicle was not used "mainly to service the insured premises." Jones asserts that this defense was waived because Horace Mann failed to raise it in its original "denial of coverage letter" to the Cheziks.

■ An insurer must give the insured "such notice of its intention to deny liability and of its refusal to defend as will give the insured a reasonable time to protect himself." *Sauer v. Home Indem. Co.*, 841 P.2d 176, 182 (Alaska 1992) (quoting 7C John A. Appleman, Insurance Law and Practice § 4686 (1979)). This notice must also "provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim." *Id.* (quoting AS 21.36.125). Notice is necessary to avoid prejudice to the insured "which may result from delays in the insured undertaking its own defense or from delays in gathering evidence essential to successfully challenge the denial of coverage or a defense." *Id.*

(citation omitted). "Thus, an insurance company which wrongfully refuses to defend is liable for the judgment which ensues even though the facts may ultimately demonstrate that no indemnity is due." *Id.* at 184 (citation omitted). Jones contends that Horace Mann failed to state all bases for denial and thus waived them.

As the superior court noted, twenty-seven days after the accident Horace Mann sent a denial letter that "put plaintiffs on notice of the grounds for denial and did not hinder them in gathering evidence to challenge the denial of coverage." [8] The instant case is thus distinguishable from *Sauer*, where the plaintiff did not learn of the insurance company's denial of coverage until nearly five years after the event. *Sauer*, 841 P.2d at 179. In that case, the lack of any communication precluded the insurance company from arguing that coverage under the policy did not exist once a judgment had been entered. *Id.* at 183. Here, the insurance company determined that coverage did not extend to the Cheziks' claim and so informed them. *See also Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir.1991) (waiver not found where there was no evidence that insurance company attempted to mislead or prejudice insured by belated announcement of a new ground for denying liability); *Waller v. Truck Ins. Exchange*, 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 387, 900 P.2d 619, 636 (1995) (only one state, out of the thirty-four to have considered the issue, has held that an insurer waives coverage defenses not stated in its initial denial letter; the overwhelming majority do not term this a waiver). Thus we conclude the superior court correctly ruled in the factual context of this case that Horace Mann did not waive the defense that the snowmachine was not used "mainly to service the insured premises."

3. *Medical payments coverage does not extend to this accident under the Horace Mann policy.*

■ Jones argues that regardless of where the accident occurred, the medical payment provisions of the policy obligated

---

**8.** For the text of the letter *see* note 1, *supra*.

Horace Mann to pay Jones' medical expenses. This policy provision states:

Coverage M—Medical Payments to Others—We pay the necessary medical expenses if they are incurred or medically determined within three years from the date of an accident causing **bodily injury** covered by this policy.... This applies only to:

. . .

2. a person away from the **insured premises** if the **bodily injury:**

. . .

b. is caused by an activity of the **insured**[.]

Jones argues that "the injuries to Frank Jones, Jr. were caused by the activity of Christopher Chezik and therefore are covered under the medical payment liability coverage without regard to the location where the injury occurred." Horace Mann counters that the operative language in this provision is the phrase "an accident causing bodily injury *covered by this policy.*" They contend that "[i]f the bodily injury suffered by Frank Jones, Jr., is not covered by this policy, then the medical payments provision does not come into effect." In our opinion this argument has merit. Since we upheld the superior court's ruling that the accident in question did not take place on "insured premises" as that term is defined in paragraphs 7(b)(6) and b(7) of the Horace Mann policy, we find no error in the superior court's rejection of Jones' claim for medical payments coverage.[9]

9. In regard to Jones's argument that Horace Mann waived all other defenses to medical payments coverage, the superior court correctly determined that

[c]oncerning Jones argument that Horace Mann waived the right to raise any other defenses to this suit which were not stated in its "denial of coverage" letter, this Court finds that argument moot in that all other theories of coverage require the accident to have occurred "on the insured premises." In other words, other defenses potentially affected by the waiver theory would only be asserted if the Court determined that the accident occurred "on the insured premises." Since the Court determined that the accident did not occur on the insured premises, the potential waiver of other arguments is moot.

10. AS 21.36.235 provides:
**Notice of premium or coverage changes upon renewal.** (a) Except as provided in AS

*4. The Chezik policy excludes negligent entrustment and supervision claims.*

■ Jones contends that, under AS 21.36.235,[10] the provisions of the renewed Horace Mann homeowners' policy do not apply, as the law requires notice to the insured of all changes in coverage. The renewal policy reads in relevant part:

EXCLUSIONS THAT APPLY TO COVERAGES L AND M

This policy does not apply to **bodily injury** or **property damage** which results directly or indirectly from:

. . .

3. the ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, supervision, loading or unloading of **motorized vehicles** ... owned or operated by or rented or loaned to an **insured.**

The original language stated in relevant part:

This policy does not apply to liability:

. . .

c. resulting from the ownership, maintenance, use, loading or unloading by an insured of motorized vehicles ... except as provided under Incidental Liability and Medical Payments Coverages[.]

We conclude that it is unnecessary to construe AS 21.36.235. As the superior court correctly observed, the original policy issued by Horace Mann also restricts coverage.

21.36.305, if the renewal premium is increased more than 10 percent for a reason other than an increase in coverage or exposure base, or if after renewal there will be a material restriction or reduction in coverage not specifically requested by the insured, written notice shall be mailed to the insured and to the agent or broker of record as required by AS 21.36.260.

(1) at least 20 days before expiration of a personal insurance policy; or

(2) at least 45 days before expiration of a business or commercial policy.

(b) If notice before expiration of the policy is not given as required by (a) of this section, the existing policy shall continue until the insurer provides notice for the time period required by (a) of this section for that policy.

(c) This section does not apply to workers' compensation insurance.

The superior court, persuaded by the reasoning of *Farmers Insurance Group of Oregon v. Nelsen*, 78 Or.App. 213, 715 P.2d 492 (1986), concluded that a "claim of negligent supervision is subject to the restrictions surrounding coverage of the underlying accident." In *Nelsen*, the court held that a policy insures "not against theories of liability, but against liability for certain injuries or damage and that injuries caused by motor vehicles off the premises of the insured are not covered by a homeowners's policy." *Id.* 715 P.2d at 494 (citations omitted). Thus the superior court reasoned, "Because the policy does not cover the accident itself, a change in the legal theory of liability does not give rise to coverage."

The superior court further observed that "[b]ecause an insured party contracts for coverage of certain types of accidents and injuries, the reasoning in *Nelsen* is more compelling" under the reasonable expectations approach to interpreting insurance contracts. We agree. Further support is sup-plied by the Ninth Circuit's construction of Alaska law. That court concluded that it was proper to deny negligent entrustment recovery where an aircraft exclusion in a homeowner's policy otherwise precluded recovery; to do otherwise would ignore the "clear language" of the clause. *Allstate Ins. Co. v. Ellison*, 757 F.2d 1042, 1045 (9th Cir.1985). We therefore hold that the superior court properly granted summary judgment as to this theory of liability.[11]

## IV. CONCLUSION

The superior court's grant of summary judgment in favor of Horace Mann is AFFIRMED.

---

11. Given our discrete holdings in section III.B.1, 2, and 3 of this opinion, it is unnecessary to address the remaining arguments advanced by the parties in this appeal.