Katherine **NELSON** as assignee of Siuleo Milo Ulisese, an individual, Lilii Ulisese, an individual, Anita Ulisese, an individual, Appellants,

v.

**PROGRESSIVE CASUALTY INSUR-ANCE COMPANY,** a foreign corporation, Danny Withers, an individual, Matt Dufour, an individual, Appellees.

No. S–11793.

Supreme Court of Alaska.

June 29, 2007.

Rehearing Denied Aug. 8, 2007.

Jason Skala, Law Office of Jason Skala, Eagle River, for Appellant.

Gary A. Zipkin, Guess & Rudd P.C., Anchorage, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

This case concerns the validity and applicability of a named driver exclusion in an automobile insurance policy. The pedestrian victim of a hit-and-run accident involving an

unlicensed and uninsured driver sued the driver's parents for negligently entrusting their vehicle to their son. The parents' auto insurance carrier refused to cover the victim's personal injury claim because the parents had previously excluded their son from coverage under the policy. The victim argues that the exclusion of the son under the policy should not bar coverage for the victim's claim against the parents for their negligent entrustment of the vehicle to their son. Because the tort of negligent entrustment rests upon the son's operation of the vehicle, which the parents elected to exclude from their insurance coverage, and because Alaska's insurance laws permit such exclusions, we affirm the superior court's grant of summary judgment to the insurance carrier.

## II.  FACTS AND PROCEEDINGS

The facts of this case are not in dispute. On June 14, 2001, Siuleo Milo Ulisese, a twenty-one-year old uninsured and unlicensed driver, drove his parents' minivan along Fifth Avenue in downtown Anchorage. The traffic signals at the intersection of Fifth Avenue and C Street were not working. While driving down Fifth Avenue, Siuleo turned left onto C Street, striking and injuring Katherine Nelson as she was crossing in the crosswalk.

Siuleo's parents, Anita and Lilii Ulisese, owned the vehicle Siuleo was operating at the time of the accident. Following the accident, Nelson filed an insurance claim with the Uliseses' automobile insurance carrier, Progressive Casualty Insurance Company. After conducting an investigation, Progressive informed Nelson and the Uliseses that it was denying coverage because Lilii had excluded Siuleo from coverage under the policy.[1] Progressive based its denial on the "Named Driver Exclusion" language in the Uliseses' auto insurance policy, which states:

If **you** have asked **us** to exclude any person from coverage under this Policy, then **we** will not provide coverage for any claim arising from an **accident** or **loss** involving a **vehicle** or **rental vehicle** being operated

by the excluded person.  THIS IN-CLUDES ANY CLAIM FOR DAMAGES MADE AGAINST **YOU,** A **RELATIVE,** OR ANY OTHER PERSON OR ORGAN-IZATION THAT IS VICARIOUSLY LIA-BLE FOR AN **ACCIDENT** ARISING OUT OF THE OPERATION OF A **VE-HICLE** BY THE EXCLUDED DRIVER.

Progressive further denied coverage on the basis of AS 28.20.440(*l*), which provides:

Notwithstanding any other provisions of law, a person who resides in the same household as the person named as insured or a person who is a relative of the person named as insured shall be excluded from coverage under a motor vehicle liability policy if the person named as insured requests that the person be excluded from coverage.

Nelson filed a claim against Siuleo for negligence and against the Uliseses for negligently entrusting their car to Siuleo. The claim was forwarded to Progressive. After investigating Nelson's claim, Progressive refused to cover the Uliseses for liability to Nelson or for the cost of defending against Nelson's complaint. The Uliseses agreed to confess judgment to Nelson's claims subject to arbitration on the amount of damages and an agreement by Nelson not to enforce the damage award against the Uliseses. The arbitration award amounted to $177,253 plus costs and fees. Anchorage Superior Court Judge Sen K. Tan confirmed the award. The arbitration award was forwarded to Progressive, which again denied coverage for the Uliseses' claims because "Siuleo Milo[ ] was an excluded driver; therefore, coverage does not apply for him, or any claims made against Lilii and Anita Ulisese arising out of the operation of a vehicle by the excluded driver."

On March 25, 2004, Nelson, as assignee of the Uliseses' claim, filed a complaint against Progressive.  The claim alleged that Progressive and its employees were negligent, that they breached their duty to defend the Uliseses, and that Progressive wrongfully breached its contract with the Uliseses when

---

**1.**  It is undisputed that on March 5, 2001 Lilii Ulisese endorsed Progressive Form 9330, entitled "NAMED DRIVER EXCLUSION ELECTION," a provision of the Uliseses' auto policy that excluded Siuleo from coverage.

it refused to cover the negligent entrustment claim.[2] Superior Court Judge Peter A. Michalski granted partial summary judgment to Progressive on the issue of coverage and dismissed Nelson's claims with prejudice. Nelson appeals.

## III. STANDARD OF REVIEW

■ We will affirm summary judgment if there are no issues of material fact and the moving party is entitled to judgment as a matter of law.[3] Contract interpretation presents a question of law, which we review *de novo*.[4] When interpreting insurance contracts we look "to the language of the disputed policy provisions, the language of other provisions of the policy, and to relevant extrinsic evidence."[5]

## IV. DISCUSSION

### A. The Excluded Driver Exception to Mandatory Auto Insurance Coverage

■ Alaska law generally requires Alaska drivers to carry automobile insurance.[6] Alaska Statute 28.22.101, a provision of the Alaska Mandatory Automobile Insurance Act (AMAIA), lays out general coverage requirements for motor vehicle insurance in Alaska. It provides that an owner's motor vehicle liability policy must "insure the person named against loss from the liability imposed by law for damages that arise from the ownership, maintenance, or use of a designated motor vehicle." Insurers are generally not permitted to issue auto policies containing provisions which reduce the scope of coverage below the statutory minimum.[7]

■ The AMAIA supplements the Motor Vehicle Safety Responsibility Act (MVSRA).[8] The MVSRA requires an uninsured driver who has been involved in an accident to prove financial responsibility for the future by posting a bond or submitting a certificate of insurance.[9] The MVSRA also requires automobile insurance policies to provide minimum coverages for a named insured and other persons using a vehicle with the named insured's permission.[10] All policies issued in the state must meet the content requirements imposed by the MVSRA, regardless of whether the policies were required as proof under the act.

The AMAIA and the MVSRA coexist as part of Alaska's Uniform Vehicle Code.[11] They are not, however, coextensive.[12] As noted, the AMAIA "supplements, but does not supplant" the MVSRA.[13]

In 1997 the legislature enacted an exception to these general coverage requirements.[14] Alaska Statute 28.20.440(*l*) provides:

> Notwithstanding any other provisions of law, a person who resides in the same household as the person named as insured or a person who is a relative of the person named as insured shall be excluded from coverage under a motor vehicle liability policy if the person named as insured requests that the person be excluded from coverage.

Subsection .440(*l*) thus permits named insured policyholders to exclude select individ-

---

2. Nelson's claims against Progressive claims adjusters Danny Withers and Matt Dufour are not at issue in this appeal.

3. *Jones v. Horace Mann Ins. Co.*, 937 P.2d 1360, 1361 (Alaska 1997).

4. *Id.*

5. *Cox v. Progressive Cas. Ins. Co.*, 869 P.2d 467, 468 n. 1 (Alaska 1994).

6. *Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 521 n. 13 (Alaska 1998).

7. *Burton v. State Farm Fire & Cas. Co.*, 796 P.2d 1361, 1363 (Alaska 1990).

8. AS 28.20.010–.640. "[A]lthough the MVSRA has never been a mandatory insurance law, as of 1968 the act's policy content requirements became mandatory for all policies written in the state." *Simmons*, 953 P.2d at 520.

9. *See* AS 28.20.010.

10. AS 28.20.440(b)(2).

11. *Simmons*, 953 P.2d at 521.

12. *Id.* at 520–21.

13. *Id.*

14. Ch. 81, § 113, SLA 1997.

uals from coverage. In this case, the Uliseses endorsed an exclusion that exempted their son Siuleo from coverage under their auto policy. Because Siuleo was excluded under the policy, Progressive refused coverage for Nelson's claim.

Nelson raises two arguments in support of her assertion that Progressive should cover her negligent entrustment claim: (1) because negligent entrustment is an independent tort, the claim does not "arise from" Siuleo's operation of the car; and (2) the named insured exclusion is unenforceable because it is ambiguous and contrary to Alaska law. We consider each in turn.

## B. Nelson's Claim of Negligent Entrustment "Arises From" Siuleo's Negligent Act.

■■ Alaska recognizes the common law tort of negligent entrustment and follows the definition in the Restatement (Second) of Torts § 390 (1965), which states:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.[15]

Nelson relies on our discussion of negligent entrustment in *Ardinger v. Hummell*[16] to support her claim that because negligent

entrustment is considered an independent cause of action, it arises from the independent negligence of the entrusting defendant and is therefore complete upon the act of entrustment. In *Ardinger*, we noted that negligent entrustment is "an independent cause of action against the [vehicle] owner and is not dependent on theories of agency, joint venture, or other forms of vicarious liability." [17] Nelson asserts that Form 9330 of the Progressive policy, which exempts from coverage claims that "aris[e] from an accident or loss involving a vehicle ... operated by the excluded person" does not bar coverage because her claim arose at the moment the Uliseses entrusted their vehicle to Siuleo. In other words, Nelson contends that her claim arose *before* Siuleo began driving the vehicle.

*Ardinger* does not go as far as Nelson would propose. *Ardinger* indicates that an entrustor need not actively participate in or direct the entrustee's actions in order to be held liable for foreseeable harm done by the entrustee.[18] This does not, however, mean that the entrustor's liability did not "arise from" the entrustee's negligence. The entrustee's act, and the resulting injury, are still required.[19]

Nelson relies on the Kansas Supreme Court case of *McCart v. Muir*[20] to support her argument that liability for negligent entrustment "arises from the act of entrustment, not the relationship of the parties." [21] Nelson's reliance is misplaced. In *McCart*, a jury found the father of a negligent driver liable for negligently entrusting a car to his son.[22] The issue in *McCart* was whether an

---

15. *See Neary v. McDonald*, 956 P.2d 1205, 1208 (Alaska 1998) (applying Restatement (Second) of Torts § 390 to determine whether parents had sufficient control of their son's car to support negligent entrustment claim against them by motorcyclist injured in collision with son's car).

16. 982 P.2d 727 (Alaska 1999).

17. *Id.* at 733 (quoting Karen L. Ellmore, Annotation, *Negligent Entrustment of Motor Vehicle to Unlicensed Driver*, 55 A.L.R.4th 1100, 1106 (1987)).

18. *Id.*

19. *See, e.g.,* RESTATEMENT (SECOND) OF TORTS § 390 cmt. b, illus. 4:

> A lends his car to his friend B for B to use to drive a party of friends to a country club dance. A knows that B has habitually become intoxicated at such dances. On the particular occasion B becomes intoxicated and while in that condition recklessly drives the car into the carefully driven car of C, and *causes harm* to him. A is subject to liability to C. (Emphasis added.)

20. 230 Kan. 618, 641 P.2d 384 (1982).

21. *Id.* at 389–90.

22. *Id.* at 387.

entrustor must pay for an entrustee's portion of the total negligence in apportioning fault. Answering in the negative, *McCart* held that the jury should have been instructed on comparative negligence because "[t]he nature and extent of negligence of the entrustor and entrustee are separate and distinct. The percentages of fault may be different in amount and should be determined separately." [23] *McCart* was concerned with comparative liability. Nowhere does *McCart* suggest that an entrustee's negligence in producing the injury is not a required element of the claim. On the contrary, the court noted "all elements of negligent entrustment were shown: (1) the father ... was instrumental in furnishing the motor vehicle to his son, Stephen; (2) the father knew or should have known Stephen was an incompetent driver; and (3) *the negligence of Stephen in operating the vehicle was a cause of the damages.*" [24]

Several courts have concluded that where the entrustee's excluded act is a "but for" cause of the injury, the injury is not covered under any theory of liability.[25] The Ninth Circuit drew this same conclusion when interpreting Alaska law in *Allstate Insurance Co. v. Ellison.*[26] In upholding an exclusion in a homeowner's policy for injuries arising out of the use of an airplane, the court stated: "Negligent entrustment requires both negligent use by the entrustee and negligence by the entrustor. Recovery must depend on the ownership or the use of the excluded vehicle." [27] The Wisconsin Supreme Court echoed this reasoning in *Bankert v. Threshermen's Mutual Insurance Co.,*[28] noting that "[the] negligent entrustment [of an automobile] is irrelevant unless the person to whom [the vehicle] is entrusted acts in a negligent manner (creates an unreasonable risk) and in fact inflicts injury as the result of such conduct." [29]

We cited *Ellison* with approval in *Jones v. Horace Mann Insurance Co.,*[30] "a case in which a plaintiff unsuccessfully sought to recover damages for negligent entrustment under a homeowner's policy that contained an exclusion covering motorized vehicles." [31] The victim in *Jones* was injured in an accident involving a snowmachine being operated by a ten-year old friend. The victim sued the driver's parents for negligent entrustment, and the homeowner's insurer denied coverage. The exclusion at issue read: "This policy does not apply to bodily injury or property damage which results directly or indirectly from ... the ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, supervision, loading or unloading of motorized vehicles ... owned or operated by or rented or loaned to an insured." [32] We held that the policy did not cover the accident itself, and for that reason concluded that a change in the legal theory of liability did not give rise to coverage.[33] Nelson attempts to distinguish *Jones* from the present case by arguing that *Jones* involved an exclusion for a specific instrumentality (a snowmachine), whereas the case before us involves an exclusion for a specific driver (Siuleo Ulisese). This difference does not distinguish the case. Other jurisdictions considering negligent entrustment cases have

---

23. *Id.* at 389.

24. *Id.* at 388 (emphasis added).

25. *See* Jay M. Zitter, Annotation, *Validity, Construction, and Application of "Named Driver Exclusion" in Automobile Insurance Policy,* 33 A.L.R.5th 121, 199–200 (1995).

26. 757 F.2d 1042, 1045 (9th Cir.1985). The disputed exclusion stated: "We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of aircraft." *Id.* at 1043–44.

27. *Id.* at 1045.

28. 110 Wis.2d 469, 329 N.W.2d 150 (1983).

29. *Id.* at 153.

30. 937 P.2d 1360 (Alaska 1997).

31. *Id.* at 1367.

32. *Id.*

33. *Id.* at 1367. *See also Northern Ins. Co. of New York v. Ekstrom,* 784 P.2d 320, 323 (Colo.1989) ("[The term] 'arising out of' has been construed to bar coverage where, but for the covered cause of loss, the injury would not have occurred.... The exclusion applies to a specific instrumentali-

consistently held that the analysis of exclusionary language is not limited to the type of policy at issue.[34]

▪■ We therefore hold that any liability on the part of the Uliseses for their alleged negligent entrustment necessarily required the underlying negligence of Siuleo in operating the vehicle.

## C. Nelson's Interpretation of the Policy Is Unreasonable.

Nelson argues that the named driver exclusion is ambiguous and that the Uliseses did not understand it. Nelson further asserts that the last clause of the final sentence excludes only vicarious liability, not negligent entrustment claims, and "limits the scope of the exclusion." We consider these arguments in turn.

### 1. The policy is not ambiguous.

Nelson's first argument is that the term "arising from" in the policy is ambiguous. Progressive Form 9330, the named driver exclusion election, states:

> No coverage is provided for any claim *arising from* an accident or loss that occurs while a covered vehicle ... is operated by the excluded driver(s). THIS INCLUDES ANY CLAIM FOR DAMAGES MADE AGAINST YOU, A RELATIVE, OR ANY OTHER PERSON OR ORGANIZATION THAT IS VICARIOUSLY LIABLE FOR AN ACCIDENT ARISING OUT OF THE OPERATION OF A ... VEHICLE BY THE EXCLUDED DRIVER.

(Emphasis added, capitalization in the original.)

▪■ Ambiguity will be found "where the contract as a whole and all extrinsic evidence support two different interpretations, both of which are reasonable."[35] A contract provision is considered ambiguous if "it is reasonably susceptible to more than one interpretation."[36] We emphasize that only where inconsistent, but reasonable, interpretations of the contract are possible will ambiguity be found: The mere fact that the parties disagree about the proper interpretation of the contract does not mean that the contract is ambiguous.[37]

▪■ We have already determined that an entrustee's negligent act is a necessary element of any negligent entrustment claim against the entrustor. Nelson's claim for recovery against Progressive therefore necessarily "arises from" Siuleo's act of driving the automobile.[38] Moreover, the policy's exclusion plainly indicates that any claim arising from Siuleo's operation of the automobile is not covered. Applying a reasonable interpretation of the phrase to the facts presented here, we are unable to find any ambiguity.[39]

---

ty, namely an automobile, rather than a theory of recovery.").

**34.** *See, e.g., State Farm Mut. Auto. Ins. Co. v. Graham*, 860 P.2d 566, 567–68 (Colo.App.1993) (relying on previous case involving motor vehicle exclusion in homeowner policy to decide case involving named driver exclusion); *Pierce v. Oklahoma Prop. & Cas. Ins. Co.*, 901 P.2d 819, 823–24 (Okla.1995) (relying on previous case involving excluded instrumentality clause in homeowner's policy to decide case involving named driver exclusion).

**35.** *C.P. ex rel. M.L. v. Allstate Ins. Co.*, 996 P.2d 1216, 1222 at n. 38 (Alaska 2000).

**36.** *Id.*

**37.** *Jarvis v. Aetna Cas. & Sur. Co.*, 633 P.2d 1359, 1363 (Alaska 1981).

**38.** *Cf. New York Life Insur. Co. v. Rogers*, 641 P.2d 218, 222 (Alaska 1982) (death likely due to hypothermia in water after airplane crash ex-

cluded from coverage where it "result[ed] from" airplane travel).

**39.** In determining whether a policy exclusion precluded claims "result[ing] from" airplane travel, we noted "[t]he question whether such a death 'results from' travel in an airplane must be answered by applying a reasonable interpretation of the phrase to the facts presented." *Id. See also McCauley v. Metropolitan Prop. & Cas. Ins. Co.*, 109 Wash.App. 628, 36 P.3d 1110, 1113 (Div. 1 1999) ("The phrase 'arising out of' means 'originating from,' 'having its origin in,' 'growing out of,' or 'flowing from' "); *State Farm Mut. Auto. Ins. Co. v. Graham*, 860 P.2d 566, 567 (Colo.App.1993), (concluding phrase "arising out of" not ambiguous in a claim for negligent entrustment as "such a claim was 'related to,' 'flowed from,' and would not exist 'but for' the acts of the entrusted driver"). *But see, e.g., Pablo v. Moore*, 298 Mont. 393, 995 P.2d 460, 462–64 (2000) (applying "minority rule" that looks to specific theory of coverage, rather than underlying cause of injury, to determine coverage and

## 2. Nelson's interpretation is unreasonable.

Nelson might still prevail despite our conclusion that this policy is not ambiguous, for we need not find that an ambiguity exists to construe the policy under the "reasonable expectations" doctrine.[40] This implicates her second argument: that the last clause of the final sentence of the exclusion excludes only vicarious liability, not negligent entrustment claims, and "limits the scope of the exclusion." And because an insurance policy is a contract of adhesion, "we construe it to give effect to the insured's reasonable expectations."[41] Thus "the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations."[42] We discern "reasonable expectations" from "the language of the disputed provisions, other provisions, and relevant extrinsic evidence...."[43]

But Nelson's claim is supported by none of these sources. As to the language of the disputed provision, Nelson argues that "vicariously liable" modifies "you"—and thus that an insured is able to take advantage of the exclusion only if his or her liability is vicarious, a grammatically tortured reading of the provision. Both the placement and language choice indicate that the provision is broad in excluding coverage: excluded under this provision are the insured, relatives of the insured, and persons or organizations vicariously liable for the accident. Any other interpretation of the exclusion would strain credulity and defy reasonable expectations.[44]

As to other provisions, there are no other provisions in the contract that support this interpretation. Finally, as to extrinsic evidence, Nelson provides no evidence supporting the Uliseses' belief that they would be covered, other than her own assertion. On the contrary, the record reflects that the Uliseses elected to remove Siuleo from the policy at two different times. In 2000 the Uliseses listed three members of their household as excluded drivers. The auto policy premium was $1,427. In February 2001 Lilii added Siuleo to the policy, and the premium increased to $3,859. In March 2001 Siuleo was again removed from the policy, and the policy premiums returned to $1,427. Given the repeated fluctuations in policy premiums and corresponding financial savings in exchange for the exclusions,[45] Nelson has failed to show that the Uliseses maintained a reasonable expectation of coverage for injuries resulting from Siuleo's operation of the vehicle.

## D. Progressive's Refusal To Cover Negligent Entrustment Claims Against the Named Insured Does Not Violate AS 28.20.440(*l*).

Nelson next argues that Progressive's named driver exclusion is impermissible under Alaska's automobile insurance statutes. She contends that while AS 28.20.440(*l*) contemplates exclusion of a named driver, the exclusion cannot be read to preclude liability coverage for the named policyholders (Lilii and Anita Ulisese). Nelson argues subsection .440(*l*) thus conflicts with the statutorily mandated minimum liability protection re-

concluding phrase "arising out of" ambiguous in policy exclusion); *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 961 P.2d 1213 (1998) (same).

**40.** *West v. Umialik Ins. Co.*, 8 P.3d 1135, 1138 (Alaska 2000).

**41.** *Id.; C.P. ex rel. M.L. v. Allstate Ins. Co.*, 996 P.2d 1216, 1222 (Alaska 2000).

**42.** *Bering Strait Sch. Dist. v. RLI Ins. Co.*, 873 P.2d 1292, 1295 (Alaska 1994) (quoting Robert Keeton, Basic Text on Insurance Law § 6.3(a), at 351 (1971)).

**43.** *Williams v. Crawford*, 982 P.2d 250, 253 (Alaska 1999).

**44.** *See Ness v. Nat'l Indem. Co. of Nebraska*, 247 F.Supp. 944, 947 (D.Alaska 1965) ("A court cannot and should not do violence to the plain terms of a contract by artificially creating ambiguity where none exists. In situations in which reasonable expectations favor the insurer, and any other would be strained and tenuous, no compulsion exists to torture or twist the language of the contract.").

**45.** Some courts considering the validity of named driver exclusions have analyzed whether the exclusion is supported by consideration, as in

quired by AS 28.22.101. She further asserts that Progressive Form 9330 exceeds the permissible scope of subsection .440(*l*).

In response, Progressive counters that in enacting subsection .440(*l*), the legislature carved out a limited exception to Alaska's statutorily mandated minimum liability coverage requirements. For the reasons set forth below, we agree.

### 1. The named driver exclusion is a valid exception to statutorily mandated liability coverage.

██ Nelson's first argument is that application of the named driver exclusion to her claims against the Uliseses improperly negates the Uliseses' statutorily mandated minimum liability coverage.[46] Alaska Statute 28.22.101 requires an owner's automobile policy to "insure the person named against loss from the liability imposed by law for damages that arise from the ownership, maintenance, or use of a designated motor vehicle." It provides for a named insured's liability coverage up to statutorily mandated limits.[47] Lilii and Anita Ulisese, as the named insureds, maintained liability coverage under the Progressive policy.

Alaska Statute 28.20.440(b)(2), part of the MVSRA, also requires that an owner's automobile insurance policy insure the named insured and every other person using the vehicle with their permission against loss "for damages arising out of the ownership, maintenance, or use of the vehicle." The stated policy behind the MVSRA is to ensure that "motorists be financially responsible for their negligent acts so that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted upon them."[48]

However, subsection .440(*l*), which provides for a specific exception from policy coverage for a named driver, can be read in harmony with the more general provisions of AS 28.20.440 and AS 28.22.101.[49] The inclusion of the phrase "[n]otwithstanding any other provisions of law" plainly indicates that subsection .440(*1*) was intended to be an exception to other potentially conflicting laws. Insurers commonly allow their insureds to use named driver exclusions to avoid covering high-risk drivers where the premium for such coverage would be cost prohibitive to the named insured.[50] Where the loss giving rise to damages arises from Siuleo's driving, subsection .440(*l*) precludes coverage under the Uliseses' own liability policy for their negligent entrustment. The minimum liability coverage otherwise required of the Uliseses is thus circumscribed, but only to the extent that the claim arose out of Siuleo's operation of a vehicle.

Other jurisdictions have upheld named driver exclusions as permissible exemptions to statutorily mandated minimum liability coverage.[51] In upholding the validity of named driver exclusions, courts have relied on public policy rationales that balance cost reduction with the desire to encourage the

the form of lower premiums. *See* 7A Lee R. Russ et al., Couch on Insurance § 110:22 (3d ed. 1995).

**46.** *See Ward v. Baker,* 188 W.Va. 569, 425 S.E.2d 245 (1992) (holding named driver exclusion of no force or effect up to limits of state's mandatory minimum insurance coverage limits).

**47.** AS 28.22.101(a).

**48.** AS 28.20.010.

**49.** *Progressive Ins. Co. v. Simmons,* 953 P.2d 510, 516 (Alaska 1998) ("To determine whether two statutory provisions conflict, we must interpret them together, in context with other pertinent provisions rather than in isolation, and with a view towards producing a harmonious whole.").

**50.** *See* Jay M. Zitter, Annotation, *Validity, Construction, and Application of "Named Driver Ex-*

*clusion" In Automobile Insurance Policy,* 33 A.L.R.5th 121, 137–38 (1995).

**51.** *See, e.g., Lopez v. Dairyland Ins. Co.,* 890 P.2d 192 (Colo.App.1994) (holding named driver exclusion valid under statutory scheme mandating insurers offer uninsured motorist coverage); *State Farm Mut. Auto. Ins. Co. v. Washington,* 641 A.2d 449 (Del.1994) (holding named driver exclusion valid so long as not used to delete uninsured motorist coverage); *Pierce v. Oklahoma Prop. & Cas. Ins. Co.,* 901 P.2d 819 (Okla. 1995) (holding named driver exclusion based on poor driving record of excluded individual consistent with compulsory liability insurance laws); *Tapio v. Grinnell Mut. Reinsurance,* 619 N.W.2d 522 (S.D.2000) (upholding named driver exclusion). *But see Ward v. Baker,* 188 W.Va. 569, 425 S.E.2d 245 (1992) (holding named driver exclusion of no force or effect up to limits of state's mandatory minimum insurance coverage limits).

procurement of insurance coverage.[52]

The legislative history of House Bill 218, which became subsection .440(*l*), indicates that the legislature was aware of the potential dangers of the named driver exclusion. Minutes of a House Labor and Commerce Committee meeting considering HB 218 reveal the committee's concern that parents who elected to exclude a child from coverage might be held personally liable with no insurance protection for the child's auto accident.[53] Committee testimony in favor of the exclusion noted, however, that the exclusion would enable a household with a high-risk driver to maintain auto coverage by excluding the high-risk driver, while encouraging the excluded driver to obtain his or her own policy.[54]

In providing for the exclusion, the legislature offered insureds a chance to avoid excessive premiums they would otherwise be required to pay if they could not exclude a high-risk driver. Ultimately, this helps to minimize the risk that a policyholder may elect to forgo coverage altogether.[55] It also encourages responsibility on the part of policyholders and excluded drivers: Policyholders are given a powerful economic incentive to ensure that an excluded driver does not operate a policyholder's vehicle, while the excluded driver is encouraged to obtain his own insurance.[56]

Forcing an insurer to provide liability coverage for claims arising out of the excluded driver's use of the vehicle also obviates the practical effect of the exclusion. It skirts a reasonable reading of the exclusion's plain language and give insureds the benefit of a bargain for which they did not pay. As the Arizona Court of Appeals noted in an analogous case:

> [I]t is inconceivable that the legislature would purposely enact statutory language that authorized the insurer to exclude coverage for personal liability incurred by the unacceptable driver and to exclude vicarious liability incurred due to the unacceptable driver's conduct, but not to exclude coverage for the named insured's personal liability for negligently entrusting a vehicle to the same unacceptable driver.[57]

In light of the countervailing legislative policies at issue, the legislature's concern with enabling households to secure affordable insurance, and the plain language of subsection .440(*l*), we hold that the named driver exclusion is a permissible exception to Alaska's minimum liability coverage provisions.[58]

### 2. The Division of Insurance approved Form 9330.

Nelson also argues that the named driver exclusion in Progressive's Form 9330 exceeds the scope of AS 28.20.440(*l*), citing the following language on Form 9330: "WARNING: If you have asked us to exclude coverage under this policy for any person, this policy will not meet the minimum coverage requirements of either Alaska's mandatory automobile insurance or financial responsibility laws." Nelson contends that subsection .440(*l*) does not contemplate that insurers could exclude the named policyholder from coverage, and asserts that Progressive's

---

**52.** *See, e.g., St. Paul Fire & Marine Ins. Co. v. Smith,* 337 Ill.App.3d 1054, 272 Ill.Dec. 666, 787 N.E.2d 852, 858 (2003) (discussing public policy rationales of sister states in upholding named driver exclusion); *Pierce,* 901 P.2d at 823 (same). *But see Iowa Mut. Ins. Co. v. Davis,* 231 Mont. 166, 752 P.2d 166 (1988) ("Although not expressly prohibited ... a named driver exclusion is contrary to the public policy of [Montana's mandatory insurance statutes], and is, therefore, invalid.").

**53.** 1997–98 Minutes of the House Labor & Commerce Committee, May 1, 1997, at 328.

**54.** *Id.*

**55.** *See Tapio,* 619 N.W.2d at 525.

**56.** *See Zamora v. Dairyland County Mut. Ins. Co.,* 930 S.W.2d at 739, 741 (Tex.App.1996) (holding that named driver exclusion furthered public policy by enabling families with members having bad driving records to secure affordable insurance and deterred insured drivers from entrusting automobiles to unsafe drivers).

**57.** *State Farm Auto. Ins. Co. v. Dressler,* 153 Ariz. 527, 738 P.2d 1134, 1138 (Ariz.App.1987).

**58.** Our decision today is confined to the named driver exclusion as it applies to liability coverage. We do not reach the issue of whether the named driver exclusion is valid when uninsured or underinsured motorist coverage is at issue.

warning on Form 9330 indicated it "knew its attempt to limit coverage is prohibited by law."

On the contrary, however, Progressive's warning was in compliance with Division of Insurance regulations intended to make policyholders aware of the law. The Division of Insurance recognized that subsection .440(*l*) allowed policyholders to exclude members of their household from their policy in exchange for a reduction in premium payments. The Division of Insurance bulletin 97–07 states:

A named driver exclusion should be signed by the named insured each policy period, and a policy with a named driver exclusion should carry a warning that the policy may be inadequate to satisfy the obligations of a motor vehicle owner or operator under the Alaska Motor Vehicle Responsibility Act or the Alaska Mandatory Insurance Law.

Bulletin 98–10 superseded bulletin 97–07. It required insurers to file and receive approval from the director of the division for policy forms that comply with subsection .440(*l*).[59] Bulletin 98–10 states: "[a]n automobile liability insurance policy that limits coverage for named persons other than as specified in AS 28.20.440(*l*) must clearly indicate that the policy does not meet the minimum coverage standards of either Alaska's mandatory automobile insurance or financial responsibility laws." Bulletin 98–10 requires that exclusions that go beyond AS 28.20.440(*l*) must be reviewed by the Division of Insurance. Progressive submitted, and the division approved, Progressive's Form 9330.

We have not directly addressed what weight we give to Division of Insurance approvals of insurance forms.[60] We have previously recognized that other jurisdictions have suggested that courts could give substantial deference to such approvals.[61] In *Government Employees Insurance Co. v. Graham–Gonzalez*,[62] we looked to the division's exercise of its delegated authority to regulate forms under Title 21, and its subsequent approval of the application form in question, in finding that a statute requiring insurers to offer under insured motorist coverage did not require application forms to state the amount of the policy premium. We noted that even if we applied our independent judgment, "the division's approval of forms ... would be entitled to some deference. In such cases this court gives 'some weight to what the agency has done, especially where the agency interpretation is longstanding.' "[63]

The Division of Insurance was concerned about policyholders unwittingly executing named driver exclusions without understanding the scope of potential risks involved. The division encouraged insurance companies to develop a disclosure form. Progressive included a plain warning on Form 9330 notifying insureds of the risks of the exclusion.[64] It appears the warning language on Form 9330 was in response to the division's requirements. The division required insurers

---

**59.** Insurance forms made part of a policy, including Progressive Form 9330, are subject to state regulation. Alaska Statute 21.42.120 requires forms that are to become part of an insurance policy to be filed and approved by the director of the Division of Insurance.

**60.** *See Gov't Employees Ins. Co. v. Graham–Gonzalez*, 107 P.3d 279, 286 (Alaska 2005) (noting that independent judgment standard typically applies to question of law unless issue involves agency expertise or determination of fundamental policy questions on subjects committed to the agency).

**61.** *Id.* (citing *McTaggart v. Liberty Mut. Ins.*, 267 Kan. 641, 983 P.2d 853, 857–58 (1999) (noting that "the interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to judicial deference")). *See also Lee v. John Deere Ins. Co.*,

208 Ill.2d 38, 280 Ill.Dec. 523, 802 N.E.2d 774, 779 (2003) (noting that approval of director of division of insurance is "entitled to great weight, although it is not conclusive on the courts").

**62.** 107 P.3d at 286.

**63.** *Id.* (quoting *Diaz v. Silver Bay Logging, Inc.*, 55 P.3d 732, 741 (Alaska 2002)).

**64.** "Because named driver exclusions eliminate significant coverage, such exclusions must be accompanied by 'strict requirements in the policies so as to insure the insured's full knowledge and consent to the endorsement.' " *Phoenix Indem. Ins. Co. v. Pulis*, 129 N.M. 395, 9 P.3d 639, 643 (2000) (citing Jay M. Zitter, Annotation, *Validity, Construction and Application of "Named Driver Exclusion" in Automobile Insurance Policy*, 33 A.L.R.5th 121, § 2[a] at 137–38 (1995)).

to obtain approval from the director of the division for this exclusion, and Progressive did so. The division approved Form 9330. Lilii Ulisese signed it. The division clearly intended that Progressive's exclusion would eliminate a named policyholder's coverage for claims arising out of the excluded driver's operation of the vehicle.

■■■■ As in *Graham–Gonzalez*, it is unnecessary for us to determine the precise standard of review we should apply to the division's approval of Form 9330.[65] Even if we give only some weight to the division's approval of Form 9330, it is consistent with our view of subsection .440(*l*). We have already noted that the purpose of subsection .440(*l*) is to allow policyholders to obtain affordable auto insurance by giving them the option to exclude a high-risk member of their household from their policy. The division approved the form, and in doing so must have contemplated the potential risks that could arise. For these reasons we find that subsection .440(*l*) and Form 9330 provide a narrow exception to the minimum liability coverage otherwise required by AS 28.20 and AS 28.22.[66]

## V.  CONCLUSION

The superior court correctly determined as a matter of law that the named driver exclusion in the Uliseses' insurance policy operated to exclude Nelson's claim for negligent entrustment. The excluded activity, Siuleo's operation of the vehicle, is an indispensable element of a claim of negligent entrustment. The Progressive exclusion is neither ambiguous nor illegal. Finally, AS 28.22.440(*l*) sets forth a limited exception to the statutorily mandated liability coverage provisions otherwise required in AS 28.20 and AS 28.22. We therefore AFFIRM the decision of the superior court.

---

65.  *Graham–Gonzalez*, 107 P.3d at 287.

66.  Nelson finally argues that a "deemer clause" in the policy's general provisions, which provides that if any part of the policy fails to conform with Alaska law "it shall be deemed amended to conform with state requirements," mandates cover-

age in this case. Because we have held that the named driver exclusion is valid, and Nelson's argument on this point presupposes the illegality of the exclusion, her argument fails.